52 N.J. Super. 233 (1958)
145 A.2d 339
FRANK RUSSO AND MARY RUSSO, PLAINTIFFS-RESPONDENTS,
v.
EDMOND FORREST, DEFENDANT, AND THE UNSATISFIED CLAIM AND JUDGMENT FUND BOARD, APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 6, 1958.
Decided October 17, 1958.
*235 Before Judges PRICE, SCHETTINO and GAULKIN.
Mr. A. Leo Bohl argued the cause for appellant.
No appearance for respondent.
The opinion of the court was delivered by GAULKIN, J.A.D.
Frank Russo recovered a judgment of $1,050 and Mary Russo a judgment of $2,000 against Edmond Forrest, an uninsured motorist. The Superior Court entered an order that the Unsatisfied Claim and Judgment Fund Board (hereafter called the Fund) pay to Mrs. Russo her judgment of $2,000. The Fund appeals, contending that the trial judge erred in his determination (a) that Mrs. Russo was physically incapable of giving notice of intention to make claim against the Fund within 30 days from the date of the accident, and (b) that notice was given on her behalf within a reasonable period thereafter.
Mrs. Russo was a passenger in her husband's automobile on April 1, 1956 when it collided with Forrest's car. At that time L. 1952, c. 174, sec. 5, as amended by L. 1955, c. 1, sec. 4 required notice of intention to claim from the Fund "within 30 days after the accident." The first notice that Mrs. Russo intended to claim from the Fund was filed August 8, 1956 by an attorney retained by her husband. She was therefore obliged to bring herself within the exceptions of the act by proving "to the court on the hearing of the application for the payment of [the] judgment that [s]he was physically incapable of giving said notice within said period and that [s]he gave said notice within 30 days after [s]he became physically capable to do so or in the event that [s]he did not become so capable that a notice was given on [her] behalf within a reasonable period."
To do that there appeared on behalf of Mrs. Russo (she did not testify) two physicians  Dr. Randazzo who *236 treated her from the day of the accident to June 25, 1956, and Dr. Kastler who treated her after July 7, 1956. As was said in Giacobbe v. Gassert, 51 N.J. Super. 111, 122 (App. Div. 1958) the testimony of Dr. Randazzo "coming as it does from plaintiff's own physician who was best able to judge [her] condition expertly, it affords the most reliable source for determining plaintiff's capability."
Dr. Randazzo testified that Mrs. Russo's injuries were "a severe sprain of the right chest * * * contusion of the right breast, contusion of the right arm * * *." She was 65 years old; she had "nervous hysteria, tachycardia and marked tremors," and hypertension. However, though she spent most of her time in bed, she was "able to be up and around with the aid of * * * her husband or her daughter" and in that fashion came to Dr. Randazzo's office for treatment. Dr. Randazzo said "Physically she could do very little. Mentally she appeared to be a fairly intelligent woman, but emotionally unstable. She was emotionally unstable. She would cry and go into spells of feeling sorry for herself and why did this thing happen to me. It would be difficult to ascertain when her moments of lucidness were there. At the time she was in my office she was emotionally upset, but there must have been times when she was capable of reasoning fairly logically and think fairly logically because, as I say, she was a fairly intelligent woman."
He defined what he meant by her emotional instability:
"From the times that I observed her, Mrs. Russo was never emotionally stable. She was always crying with pain and bemoaning the fact that this accident should have happened, and she was not logical with me in telling me what her complaints were. She had me X-ray her more than once because of the fact she thought sure there was something broken, even though I X-rayed the first time and I told her there wasn't. I had to convince her by re-X-raying her and showing her the pictures. Those present an illogical way of thinking. However, in her mind that she did have something broken there because she had so much pain. However, it is difficult for any doctor to say whether a patient who presents a picture of pain and disturbance, what she will do when she is at home or when she is at rest or when she is in the company of people to whom she doesn't complain as much as she does to the doctor. I don't *237 know whether I make myself clear in this explanation, but to me she was always emotionally upset."
But in answer to a question by the court Dr. Randazzo testified:
"Q. Doctor, in your opinion, was she physically capable of filling out that form  A. Yes
Q. (Continuing)  within thirty days after the accident? A. Yes. I think she could have filled out that form."
Dr. Kastler testified that he did not see Mrs. Russo until July 7, more than three months after the accident. At that time he found her suffering from "severe hypertensive heart disease with cardiac failure" which had been severely "aggravated by the accident," but she was able to come to his office with the aid of her husband or daughter. He prescribed rest, digitalis and "sedatives because she was nervous * * * very emotional * * * very easily upset * * *." However, he testified on cross-examination:
"Q. She told you, did she not, that she was in an automobile accident? A. Yes.
Q. She told you that herself? A. Yes.
Q. And she told you the type of injury she had suffered in the accident? A. Yes.
Q. She told you of the trauma she received? A. Yes.
Q. Now, she was able to tell you those things, wasn't she? A. Yes.
Q. She wasn't so mentally distressed that she couldn't tell you that she had an automobile accident? A. Yes."
The testimony reviewed above adds up to no more than that Mrs. Russo was nervous and easily upset. That is not sufficient to carry the burden placed on her by the statute to prove she was physically incapable of giving the requisite notice within the 30-day period. And the testimony received above was all there was except the following which requires some additional comment.
Dr. Kastler testified (emphasis added):
"A. Doctor, I have here a form, U.C.J. 201, which is a notice of intention to make claim. * * * Will you look at this, Doctor, *238 and tell me, in your opinion, whether you think at the time Mrs. Russo, that is, from the time that she first came under your treatment, whether she was capable of understanding and filing that with the State of New Jersey?

* * * * * * * *
A. Your Honor, that is what I think, she was not capable of doing it. Physically, she was able to write, but mentally she was so upset that she couldn't 

* * * * * * * *
A. Well, physically she might have been able to write, you know, but she was so upset mentally that she probably didn't even understand what this whole thing was all about. That is my opinion."
The hearing was on February 14, 1958, almost two years after the accident. The following further testimony of Dr. Kastler helps us to understand what he had in mind when he testified as quoted above:
"Q. And, Doctor, her mental capabilities of filing such a form, what is your opinion as to how long that condition existed? A. I don't think she will be able to do it now even.
Q. Doctor, in your opinion, without the assistance of someone who would act as her agent, at any time had Mrs. Russo been able to file this? A. That is my opinion, that she wouldn't be able to file it at any time."
Contrast this with Dr. Kastler's testimony that she was unable to testify at the trial of the action against Forrest in April 1957 because "she was not able to testify without hurting herself, because she was so emotionally upset and any little thing would get her upset * * *." In other words, it was because of her nervousness and her emotional instability that she could not testify, and not because she was unable to recall what had happened and relate it from the witness stand.
The inability to understand Fund form 201 is no evidence that Mrs. Russo was incapable of giving the required notice unless that inability was due to a condition which made Mrs. Russo incapable of understanding in a reasonable manner the nature and effects of any other business she might undertake, such as the making of a will. There was no showing that Mrs. Russo was mentally so incompetent.
*239 Many people in good health might not "understand" form 201. That is unimportant unless the lack of understanding is due to the cause mentioned above. Every competent person is conclusively presumed to know the terms of the statute and that a notice of intention to claim from the Fund is required within a specified period. If he becomes physically incapable or mentally incompetent to act upon that knowledge he is excused, but not otherwise. The testimony here is not sufficient to establish that Mrs. Russo was not capable of giving notice within 30 days.
Even if it were, notice on her behalf was not given within a reasonable period. The trial judge made no determination as to when, if ever, Mrs. Russo became physically capable to give the notice. If we accept Dr. Kastler's testimony, she is still incapable of giving it. Therefore we do not have to deal with that portion of the statute which provides for "notice within 30 days after he became physically capable to do so" but with that portion which provides that "in the event that he did not become so capable, that a notice was given on his behalf within a reasonable period."
What constitutes a reasonable period depends obviously upon the facts of the particular case. Important questions in making that determination are who was there about her to give the notice on her behalf, what knowledge did they have of the accident, how much did they need to find out from her, how much could she tell them, etc. In the case at bar her husband was with her at the time of the accident. Since he was driving the car, and was not injured, he probably knew more about the accident than she did, and since he took her to the doctor and paid the medical bills he very likely knew as much or more about her injuries and expenses as she did herself. In addition, her daughter was constantly about, aiding Mrs. Russo. When the notice was finally given to the Fund in August it was given by a lawyer retained by the husband. Under these circumstances it is our conclusion that the notice on August 8 of the accident of April 1 was not given on her behalf within the reasonable period required by the statute.
*240 Prompt notice of the happening of a casualty insured against is essential to an insurer, and a requirement that such notice be given is reasonable and will be enforced. Miller v. Zurich General Accident & Liability Ins. Co., 36 N.J. Super. 288, 296 (App. Div. 1955); Weller v. Atlantic Casualty Ins. Co., 128 N.J.L. 414 (Sup. Ct. 1942); Macchia v. Scottish Union and National Ins. Co., 101 N.J.L. 258 (Sup. Ct. 1925). Since the liability of the Fund is frequently not less but more than that of an insurance company (cf. N.J.S.A. 39:6-78, 79), it would seem that the Fund needs prompt notice as much as any insurer. Yet the statutory provisions for notice to the Fund are much more liberal than those contained in insurance policies. Indeed, it can be argued that the notice required by the statute (N.J.S.A. 39:6-65) is not the same as the notice required in an insurance policy. In the law of insurance there is a distinction between a notice of loss and a proof of loss. Under an insurance policy it is the notice that must be given early after the happening while the proof of loss, in those policies in which it is required, comes 30 or more days later, at a time fixed by the policy or on demand of the insurer. Cf. N.J.S.A. 17:36-5.20, lines 90-113; N.J.S.A. 17:36-6. See also Brindley v. Firemen's Insurance Co., 35 N.J. Super. 1 (App. Div. 1955). The notice of loss under a policy rarely requires much detail  usually the time and place of the accident and the names of those involved and of known witnesses. Cf. Weller v. Atlantic Casualty Ins. Co., supra; Macchia v. Scottish Union and National Ins. Co., supra. The notice under N.J.S.A. 39:6-65 is required to be on a form prescribed by the Fund and
"shall specify the time and place of the accident, identify the operators and vehicles involved therein and such witnesses to said accident as are then known to him and describe the injuries then known to him and the damage to property sustained. Said notice shall be accompanied by (a) a certification by a physician of the injuries sustained so far as they can then be anticipated and of the treatment afforded by him, (b) itemized estimates of an automobile repairman or itemized bill, of the cost of repairs of the damage is *241 to an automobile, (c) such information as is known to him with regard to liability insurance in effect with respect to the motor vehicles involved in the accident and (d) a copy of the complaint if an action has theretofore been brought for the enforcement of such claim."
Such information is what a proof of loss usually contains.
Justice Heher has pointed out (Giles v. Gassert, 23 N. J 22, 31 (1956)) that our statute is modeled after the Ontario act but the section which requires notice "is original with us; the Ontario act does not have a like provision. And there is no similar statute elsewhere in this country, although North Dakota has legislation on the subject." It may therefore be argued that what the Legislature had in mind was a proof of loss and not a notice of loss, and that therefore it meant for the court to look much more leniently upon delay in filing this proof of loss than it has looked upon failure to give notice of loss under a policy. And it may be pointed out that the statute has been made even more liberal by Laws of 1956, c. 200, sec. 1, effective July 1, 1956, which amended the statute to give 90 days instead of 30 to file the "notice." Therefore, it may be argued that even though the statute makes the filing within the specified number of days "a condition precedent" for those physically able to file, and there is no room for construction to help those physically able who fail to file within that time (Schlenger v. Conti, 47 N.J. Super. 566, 570 (App. Div. 1957)), when the problem is to construe what is a reasonable period within which notice may be given on behalf of one physically disabled, the court should look upon the facts with a liberal eye. Cf. Giles v. Gassert, supra.
On the other hand, it must be remembered that this "notice" is usually the first knowledge the Fund has of the accident and therefore it would seem unwise to accept an unreasonable delay as reasonable because of any artificial rule of construction. And though the statute does say the notice shall be "on a form prescribed" by the Fund that does not mean the claimant or someone on his behalf may not write the Fund, advise it of the accident, and ask for *242 forms. Cf. Giacobbe v. Gassert, supra. The date of the receipt of such a letter, and its contents, would very likely have a bearing favorable to the claimant on the ultimate question whether notice by or on behalf of the claimant was given within a proper time.
It would be impossible in a single opinion to lay down general rules for the guidance of all future cases. We confine our conclusions to the case at bar and conclude that here the testimony does not support the order appealed from and it is set aside. No costs.