SALVATORE GIACOBBE, PLAINTIFF-APPELLANT, v. FREDERICK J. GASSERT, JR., DIRECTOR OF DIVISION OF MOTOR VEHICLES, DEFENDANT-RESPONDENT.

Argued February 17, 1959—Decided March 17, 1959.

*Mr. Frank M. Lario* argued the cause for appellant (*Mr. Joseph Pierce Lodge,* on the brief).

*Mr. William G. Bischoff* argued the cause for respondent (*Messrs. Carroll, Taylor & Bischoff*, attorneys).

The opinion of the court was delivered by

HEHER, J. The case is here by our certification of a judgment of the Appellate Division of the Superior Court, 51 N. J. Super. 111 (App. Div. 1958), which reversed a judgment of the Law Division of the court for the plaintiff in an action for the satisfaction of damages for bodily injuries arising out of another's use of a motor vehicle, according to L. 1952, c. 174, as amended, N. J. S. A. 39:6–61 et seq., providing an "unsatisfied claim and judgment" fund for the purpose. Plaintiff suffered severe injuries on June 11, 1955 at the hands of a "hit-and-run" driver of a motor vehicle while walking on a highway in Lindenwold, New Jersey. The driver has not been identified.

The jury returned a verdict of $7,500. The judge resolved in plaintiff's favor an issue as to residence in New Jersey qualifying him for recourse to the fund, N. J. S. A. 39:6–62; and he also found as a fact the giving of timely notice of the accident and of plaintiff's intention to make a claim on the fund for such damages if otherwise uncollectible, made a condition precedent to a demand for payment from the fund by N. J. S. A. 39:6–65.

The Appellate Division affirmed the finding of residence, as properly determinable by the judge on conflicting evidence; but on the issue of timely notice the holding was that on July 21, 1955, "the date plaintiff was discharged from the hospital following his initial hospitalization, he was not physically incapable within the meaning of the act," and "[a]s the statutory period began to run from that date the notice which it is now agreed was received December 27, 1955 was out of time whether the applicable period be considered to be 30 days or 90 days," as provided by the amendment effected by L. 1956, c. 200, § 1, N. J. S. A. 39:6–65.

No question is made here as to plaintiff's qualification by residence to invoke the statutory relief. The insistence is that the remedy has been lost by noncompliance with the precondition of notice of the accident and the intention to resort to the fund for damages otherwise uncollectible given

within 90 days after the accident, *L.* 1956, *c.* 200; *L.* 1958, *c.* 99, *N. J. S. A.* 39:6–65, provided that the person so entitled "may, in lieu of giving said notice within said time, make proof to the court on the hearing of the application for the payment of a judgment (a) that he was physically incapable of giving said notice within said period and that he gave said notice within 90 days after he became physically capable to do so or in the event he did not become so capable, that a notice was given on his behalf within a reasonable period"; and then comes a provision, (b), for a 15-day notice to the board of the insurer's "disclaimer" on a policy of liability insurance held by the alleged tortfeasor. Subdivision (b) was introduced by *L.* 1958, *c.* 99; subdivision (a) is in the same terms as the earlier act, *L.* 1955, *c.* 1, save that the period for the giving of the notice was extended from 30 to 90 days. In "hit-and-run" cases, *L.* 1952, *c.* 174, § 18; *L.* 1955, *c.* 1; *L.* 1956, *c.* 150; *L.* 1958, *c.* 99, *N. J. S. A.* 39:6–78, compliance with the foregoing provision for notice is also made a condition prerequisite.

The plaintiff suffered comminuted and compound fractures of both legs: the right leg had three breaks and the left leg two—"fractures of both his tibia and fibula, large and small bones of the lower leg"; and there were head injuries and concussion and shock; hospitalization continued until July 21, 1955, and he was thereafter confined to his boarding house, his legs in cast and restricted to the use of a wheel chair, until February 2, 1956, when he was returned to the hospital for a proposed bone-grafting operation to bring about a union that had not fully materialized according to X-rays; when the cast was removed, the operation was found to be unnecessary; the cast was restored, and he was discharged, after confinement lasting 13 days; thereafter he had outside treatments, and "then he was ambulated, gotten up on crutches," the while completely dependent upon the landlady for his care. And he was in pain much of the time. In the fall of 1955 his landlady learned of the Unsatisfied Claim and Judgment

Fund, and on November 16, 1955 she informed the fund board, by letter, of the plaintiff's mishap and of his dependency on her. As stated, it is now conceded that the statutory notice was received by the board on December 27, 1955.

The defendant director reads the statute literally. Only "physical" incapacity to give the notice would toll the running of the statutory time, then 30 days, now 90 days, until physical capacity was restored, when the time would begin to run, and, if such incapacity continued, then notice "given on his behalf within a reasonable period" would suffice.

█ It is the obvious reason of a law that gives it life, not the strict, literal sense of terms. The words may be expanded or limited according to the spirit of the legislative expression. The animating principle of the correlated symbols of expression prevails over the import of particular words and phrases, considered *in vacuo* or in the context of other and different circumstances. The whole is to be coordinated in fulfillment of the overriding plan and purpose; the procedural course is not an end in itself but a mechanism in aid of the substantive policy. *Corrigan v. Gassert*, 27 *N. J.* 227 (1958); *Salz v. State House Commission*, 18 *N. J.* 106 (1955). And here the statutory relief is to be accorded to all who are within the given class, as a peremptory measure of social policy; and the notice is designed to afford a timely inquiry and thus to safeguard the fund against fraud and imposition. *Giles v. Gassert*, 23 *N. J.* 22 (1956).

██ As said in *Giles,* the act is to be liberally construed to advance the remedy, due regard being had for the protection of the fund and the realization of the essential legislative design; and to this end it suffices if, because of the physical injuries and their treatment and preoccupation with his affliction and fear of evil consequences, the victim of the mishap was not mentally and emotionally adjusted to his responsibility of giving notice; and in this regard there was, as in *Giles,* an issue of fact for the Superior Court.

And we concur in the finding there made. It is not dispositive of this issue that the victim was unaware of the statute until his landlady became informed after inquiry. His incapacity in all likelihood was a factor contributing to his continued ignorance of the law and the fund created for relief in such cases; it was then a comparatively new device not within common knowledge and experience. Plaintiff acted in the utmost good faith; he did not willfully default in his obligation, and the fund has not been prejudiced; its administrators have not been disadvantaged in the execution of the statutory policy. There is no contention *contra*. And it is to be observed here that "hit-and-run" casualties almost invariably come under immediate police notice and investigation.

This is not to say that actual prejudice is the determinative consideration in all circumstances. Delay in the giving of notice must reasonably come within the statutory rule. But, as said, notice is a process to prevent overreaching and otherwise to secure efficient administration of the fund; and the provision should be liberally read and applied to serve and not to subvert the substantive policy of relief in the given circumstances. It is not punitive but protective; and the grace provision is to be assessed accordingly. Here, the claim is concededly within the principle of the act; and the delay in giving notice is reasonably attributable to mitigating conditions within the reason and spirit of the rule itself.

The judgment of the Appellate Division is accordingly reversed; and the judgment of the Law Division of the Superior Court is affirmed.

*For reversal*—Chief Justice WEINTRAUB, and Justices HEHER, BURLING, JACOBS, FRANCIS and PROCTOR—6.

*For affirmance*—None.