# MUNDEY *v.* UNSATISFIED CLAIM AND JUDGMENT FUND BOARD

[No. 123, September Term, 1963.]

170

*Decided December 11, 1963.*

The cause was argued before BRUNE, C. J., and HENDERSON, PRESCOTT, HORNEY and MARBURY, JJ.

*Marvin M. Polikoff,* with whom was *LeRoy H. List* on the brief, for the appellant.

*E. Clinton Bamberger, Jr.,* for the appellee.

HENDERSON, J., delivered the opinion of the Court.

The question presented in this case is whether the appellant was excused, from failing to file notice of his claim against the Unsatisfied Claim and Judgment Fund within ninety days from the date of the accident in which he was injured, by reason of physical incapacity.

On November 23, 1960, the appellant, while a passenger in a car owned and operated by one Jack Wright, was seriously injured and on October 11, 1962, he recovered a default judgment against Wright for $18,000. On November 13, 1962, he filed a petition for payment out of the Fund, alleging that Wright had no insurance and assets from which the judgment could be collected. The Fund Board denied liability on the ground that notice had not been given to it within 90 days following the accident. After hearing, the court denied the petition.

Code (1957), Art. 66½, sec. 159 requires a qualified judgment creditor who seeks payment from the Fund to show that

he has met the requirements of sec. 154. The latter section requires that the claimant "shall, within 90 days after the accident, as a condition precedent to the right thereafter to apply for the payment from the fund, give notice to the Board, as prescribed by it, of his intention to make a claim thereon for such damages, if otherwise uncollectible, and shall otherwise comply with the provisions of this section; provided, any such qualified person may, in lieu of giving said notice within said time, make proof to the court on the hearing of the application for the payment of a judgment * * * that he was physically incapable of giving said notice within said period and that he gave said notice within 30 days after he became physically capable to do so * * *." [1]

It is conceded that the appellant gave notice, through counsel, on February 22, 1961, on the ninety-first day after the accident. The case turns, then, on whether the appellant proved that he was physically incapable of giving the notice during the 90 day period and that he gave the notice within 30 days after he became capable. This would seem to present a question of fact, and we think there was evidence to support the finding of the trial court on both issues.

On the next day after the accident the appellant, although he had sustained fractures of both legs and of two ribs, in addition to lacerations of the face, was capable enough to ask his sister to obtain forms for insurance benefits from his employer. Within forty-eight hours after the accident he signed a claim form. He signed another claim form within two weeks. On the twenty-fifth day he was discharged from the hospital and went to his sister's home. There he read books and magazines, saw visitors, watched television and moved about in a wheel chair. At no time was he unable to communicate, except possibly at the time of his first admission to the hospital and at the time of a subsequent operation on December 6, 1960. The record makes it clear, we think, that the only reason the appellant did not give notice to the Fund during the 90 day period was that he did not know such a fund existed. When

1. Chapter 682, Acts of 1961, extended the 90 day period for giving notice to 180 days, but the change is not applicable to the case at bar.

he learned of its existence through a friend he immediately consulted a lawyer, who filed notice the same day. Unfortunately, the time had run. There was no evidence of inability to give notice during the crucial period from January 22, 1961, until the notice was given.

We think the words "physically incapable of giving notice" clearly import a greater incapacity than mere inability to give notice in person or to give notice only with difficulty. The mere fact that a patient is hospitalized, or confined to bed and a wheel chair, would not necessarily prevent communication. In 2 *Merrill on Notice* (1952), sec. 832, the author states: "* * * confinement to bed or to home should not be considered as conclusively excusing a failure to notify * * *. The test should be whether the notifier is incapacitated from attending to his affairs in general." (footnotes omitted) See also *Grys v. Motor Vehicle Accident Indem. Corp.*, 220 N. Y. S. 2d 653 (N. Y. App. Div.).

In *Hart v. Com. of Motor Vehicles*, 226 Md. 584, the trial court held that physical incapacity to give notice was not established by the fact that the claimant had been hospitalized with a broken leg and confined to her home for more than the 90 day period. There, as here, failure to give notice was attributable to a lack of knowledge rather than a lack of ability. We dismissed the appeal because the statute at that time did not provide for an appeal.[2] At the same time we observed (p. 588) that "* * * even if we had jurisdiction to consider this case on the merits, it is not likely that the result would be different." This was at least an intimation that we agreed with the construction placed upon the statute by the trial court.

The appellant relies strongly upon the case of *Giacobbe v. Gassert*, 149 A. 2d 214 (N. J.), and urges that we follow it because our statute was patterned after the New Jersey statute. *Maddy v. Jones*, 230 Md. 172. With great respect for the able Court that decided the *Giacobbe* case and for the very competent Judge who wrote its unanimous opinion, we are unable

---

2. As noted in *Maddy v. Jones*, 230 Md. 172, 176, the legislature subsequently added sec. 177 A to Art. 66½, by Chapter 49, Acts of 1962, permitting an appeal.

to agree that the construction of our statute should be in accord with the views there expressed. That construction was not arrived at until after our statute had been adopted, and hence it cannot be considered as impliedly adopted by our Legislature when it enacted our statute. Cf. *Pub. Serv. Comm. v. Balto. Trans. Co.,* 207 Md. 524, 534. The *Giacobbe* case may be distinguishable on the facts from the case before us, even if our construction of our statute were the same as that of the New Jersey Act reached by the Supreme Court of New Jersey. In effect, the New Jersey Court held that to show physical disability to give notice of a claim, "it suffices if, because of the physical injuries and their treatment and preoccupation with his affliction and fear of evil consequences, the victim of the mishap was not mentally and emotionally adjusted to his responsibility of giving notice." On this matter, the Supreme Court found that an issue of fact was presented, and it upheld the trial court's resolution of that issue in favor of the claimant. Here, we think the evidence fails to show that the appellant was in any such condition, and shows, on the contrary, that he was claim—and insurance—conscious and was capable of giving, and did give, proper notice with regard to insurance coverage of which he knew. Nor do we think he was any the less likely to learn of the newly enacted statute from a visitor to his bedside, as he eventually did, than if he had been ambulatory.

We agree with the Supreme Court of New Jersey that an act such as that before us should "be liberally construed to advance the remedy, due regard being had for the protection of the fund and the realization of the essential legislative design." (See 149 A. 2d at 216.) We are, however, unable to agree with that Court's view above quoted as to what will suffice to satisfy the statutory term "physical disability." Our statute says just that—"physical disability." It does not say "not mentally and emotionally adjusted to the responsibility of giving notice." The language which our General Assembly used has a usual meaning far less broad, and we think that under canons of statutory construction established in this State, we should be going beyond our proper sphere if we were to read into those relatively simple words a meaning they do not ordi-

narily carry, in order to achieve a more generous remedy, even though such a generous remedy might be thought to be socially desirable. Rights conferred under this act are purely legislative creations, and (within constitutional limits) they may be made subject to such conditions as the Legislature may see fit to impose. We think the appellee's construction of our statute is sound—that it guarantees, in any event, a minimum of 90 days (since enlarged to 180 days) for the giving of notice and that if physical disability prevents the giving of notice until more than 60 days (150 days under the statute as now amended) after the accident, the time for giving notice is extended until 30 days after such physical disability shall have ceased. This, of course, may extend the time for giving notice until long after the expiration of the original 90 (or 180) day period. The General Assembly may well have re-. garded this as a sufficiently liberal provision to carry out the beneficent and remedial purposes of the statute. We see no basis for our attributing to the General Assembly an intention to be more generous than the ordinary meaning of the words it employed would import. If it desires to go further, it can, of course, readily amend the statute. The question of social policy, in our estimation, is peculiarly appropriate for legislative, not judicial, determination.

*Judgment affirmed, with costs.*