## UNSATISFIED CLAIM AND JUDGMENT FUND BOARD *v.* MOSLEY

[No. 281, September Term, 1963.]

*Decided April 13, 1964.*

The cause was argued before BRUNE, C. J., and HENDERSON, PRESCOTT, HORNEY and MARBURY, JJ.

*Gerard Wm. Wittstadt, Assistant Attorney General,* with whom was *Thomas B. Finan, Attorney General,* on the brief, for the appellant.

*Joseph F. Lentz, Jr.,* with whom were *Jerome B. Monfred* and *Frank B. Walsh, Jr.,* on the brief, for the appellee.

PRESCOTT, J., delivered the opinion of the Court.

This is an appeal by the Unsatisfied Claim and Judgment Fund Board (Board) from an order passed by Judge Duckett on July 30, 1963, holding that the Board was given timely notice on behalf of the appellee of damages resulting from the use of an automobile, as required by Code (1957), Article 66½, Section 154, as amended by Ch. 49, Section 1, of the Acts of 1960. (Later amended by Ch. 682, Section 1, of the Acts of 1961, but this amendment not applicable here.)

The appellee raises several questions, but the case may be determined by answering the two aspects of the following one: Was the appellee physically incapable of giving notice to the Board, and if so, was notice given on his behalf within a reasonable period?

On September 10, 1960, appellee was injured when the automobile in which he was riding collided with another. At the time of the accident, he was nineteen years of age; the operator of the other automobile, who was responsible for the collision, was an uninsured motorist.

As a result of the accident, the appellee sustained a comminuted fracture of the shaft of the right femur, and "avulsion compound" fracture of the right talus, a fracture of the left clavicle, a laceration of the right knee extending into the joints and a cerebral concussion. He was hospitalized for approximately six weeks, and subsequent to this hospitalization, he was taken to the home of Ella Carr, a friend, where his sister was living. He remained in a body cast for about two months. After the cast was removed, he remained in bed for six weeks to two months, after which he was able to ambulate on crutches, which he used for more than one month. On February 25, 1961, he appeared as a witness in the Circuit Court and testified. After

June 11, 1961, he received no further medical treatment for the injuries alleged in his notice of intention to make claim.

On or about September 27, 1961, Evelyn Hall contacted an attorney, requesting that he represent the appellee. The attorney filed a Notice of Claim with the Board, which was received by it on September 29, 1961. A letter of denial was received from the Board dated October 6, 1961, and a reply was made by letter dated October 11, 1961 advising the Board of the claim of disability being made on behalf of the appellee.

On September 10, 1962, appellee was transferred to Crownsville State Hospital by the Johns Hopkins Hospital, and was subsequently placed on convalescent leave on November 7, 1963. Examinations were made and tests taken which found that the appellee was "mentally defective-moderate level" and was suffering from an organic brain damage.

Suit was instituted on behalf of the appellee and a default judgment obtained against the uninsured motorist in the amount of $10,000. At the hearing on the application for payment, the court found that the appellee's failure to comply with the ninety-day notice provision was due to a physical disability and that notice was given on his behalf within a reasonable time and it ordered the appellant to pay the appellee the sum of $9,900.

There can be little doubt that the statute should be liberally construed so as to advance the remedy, due regard being had for the protection of the Fund and the realization of the essential legislative design. *Mundey v. Unsatisfied Fund*, 233 Md. 169, 195 A. 2d 720; *Giacobbe v. Gassert*, 149 A. 2d 214 (N. J.). And we have stated that the question of whether one is "physically incapable of giving notice" seems to present a question of fact. *Mundey v. Unsatisfied Fund, supra.* Also, sec *Giacobbe v. Gassert, supra.* And in *Mundey,* we quoted with approval 2 *Merrill, Notice,* § 832, wherein the learned author states: " '* * * confinement to bed or to home should not be considered as conclusively excusing a failure to notify * * *. The test should be whether the notifier is incapacitated from attending to his affairs in general.' "

From the above, it is seen that the first aspect of our question presents a question of fact, which the trial court found in favor of the appellee; and, after examining the evidence, we

cannot say his finding was clearly erroneous. Maryland Rule 886 a. The record discloses that appellee's brother and an elderly woman were killed in the accident, and appellee received very serious and painful injuries that required hospitalization for two months, followed by confinement to bed for approximately another two months and the use of crutches for another month. When taken to the hospital, he was in a coma, which lasted several days. The injuries required medical treatment until June 11, 1961, some nine months after the collision. His sister noticed a change in the appellee after his injuries— he became very forgetful, rather confused and had difficulty in remembering things. The report of the Crownsville State Hospital, a hospital for the treatment of mental patients to which appellee was taken, showed a diagnostic impression of chronic brain syndrome associated with trauma with psychotic reaction. When admitted, he "was so confused, unconcerned, [and] disinterested that he did not answer the questions willingly." After he was encouraged by the examiner, "he gave a few disconnected, incoherent answers to questions." He apparently had "been suffering from an acute thinking disorder with confusion, affect disturbances, intellectual impoverishment, poor reasoning and judgment and poor insight," and "it is obvious * * * that the patient has been having ideas of delusions and has been hallucinating both in the auditory and visual fields." And "in addition to the symptoms of the schizophrenic process, this patient may have a permanent brain damage due to trauma in the automobile accident in which he sustained a fractured skull * * *."

Dr. Terrell, a qualified psychologist at Crownsville State Hospital, scored a full scale I.Q. of 54 (the average is 90 to 110), a verbal I.Q. of 55 and a performance I.Q. of 59, all of which are within the "mental defective range." On the Bender-Gestalt figures, the patient reproduced them in such a way that they indicated organic brain damage. The patient was functioning within "the mental defective (moderate) level of general intelligence" and there was little indication that he had previously been, or will in the future be, able to function beyond this level to any significant degree. The results of tests "strongly suggest the presence of an organic disorder which

was probably congenital or occurred in early infancy." The doctor felt the patient's condition was one of long standing, and "the accident could have aggravated" it. The doctor was also of the opinion that appellee was incapable of making a will, and that he would need supervision in managing any type of business affairs, even "on how to buy clothes and what food to buy."

The above evidence was, we think, sufficient to sustain the trial court's finding of physical incapacity. The first definition given by *The American College Dictionary* of "physical" is "pertaining to the body." It is axiomatic that one's brain is a part of the human body, and it is a well-recognized truth that an organic (structural alteration as opposed to a functional disturbance) disease of the brain can, and does, effectuate a number of physical disabilities, as for instance a paralytic stroke. Indeed, when an organic disease of the brain creates disability, it is, in and of itself, a "physical disability." We hold, therefore, that the evidence taken as a whole (without repeating it), especially that of the organic brain damage and Dr. Terrell's statement that there was little indication that appellee had previously functioned above his "level" at the time of examination, warranted a finding that he was "physically incapable" of giving notice, within the purview of the statute.

The appellant lays great stress, and relies almost entirely, upon our decision in *Mundey v. Unsatisfied Fund, supra,* with reference to the aspect of the question now under consideration. It quotes from the decision, and then suggests, "in view of the above case, it is submitted that the mental status of the appellee is irrelevant insofar as his failure to file within the time prescribed by law." Appellant, obviously, has misconstrued the opinion; there is nothing therein that would justify the adoption of the suggestion. The facts there were entirely different from those in the case at bar, and it will not be necessary to repeat them. The portion of the opinion relied upon is where, after expressing our profound respect for the New Jersey Court, Judge Henderson, speaking for our Court, declined to follow a decision of that Court, *Giacobbe v. Gassert, supra,* insofar as it stated that one who had "not mentally and emotionally adjusted to the responsibility of giving notice" was

excused from giving the notice required by the statute on the ground of "physical disability." There is not the slightest intimation in the opinion that an organic brain disease could not render one physically incapable of giving notice.

This leaves for consideration the other aspect of the question. Notice was given the Board on behalf of the appellee slightly more than one year after the accident. We agree with the Superior Court, Appellate Division, of New Jersey that what constitutes a "reasonable period" under the statute depends upon the facts of each particular case, and in determining what is such a reasonable period within which notice may be given on behalf of one physically disabled, courts should look upon the facts with a liberal eye. *Russo v. Forrest,* 145 A. 2d 339 (N. J.). The facts herein may properly be characterized as unusual. Appellee was a young man, who suffered serious injuries to his body and a fractured skull. He was not of high intellectual capacity, but on the contrary was decidedly retarded—the trial judge classified him as a moron. Apparently his only close relative was his sister, and the record does not show that she had had any business experience or a substantial education. At the time of the accident, appellee was suffering from an organic brain disease (which may have been aggravated as a result thereof), or developed one as a result of the accident. He displayed no "form" nor "insurance" consciousness as did the claimant in *Mundey, supra,* but on the contrary was "confused, unconcerned [and] disinterested" when he entered the mental hospital two years after the accident. Without repeating more of the facts, we hold that the circumstances surrounding this case, taken as a whole, warranted the trial judge in finding that the notice had been given within a reasonable period after the accident.

*Order affirmed, with costs.*