**MT. BEACON INSURANCE COMPANY**

v.

Grover Cleveland **WILLIAMS**, Sampson Bright, Helen V. Bright, John R. Jewell, Commissioner of Motor Vehicles of the State of Maryland, the Unsatisfied Claim and Judgment Fund Board, Betty Johnson, et al.

**Civ. No. 18784.**

United States District Court
D. Maryland.

Feb. 26, 1969.

---

7. The court declines to consider petitioner's argument regarding the right to counsel in the context of this case.

Robert E. Cahill and Melnicove, Asch, Greenberg & Kaufman, Baltimore, Md., for plaintiff.

Francis B. Burch, Atty. Gen., and William E. Brannan, Asst. Atty. Gen. of Maryland, Baltimore, Md., for John R. Jewell, Commissioner of Motor Vehicles, and The Unsatisfied Claim and Judgment Fund Board.

Jack L. Hardwick, Hardwick & Tripoda, Baltimore, Md., for Grover Cleveland Williams.

THOMSEN, Chief Judge.

This case presents a dispute between an insurance company (Mt. Beacon) and the Board of the Unsatisfied Claim and Judgment Fund (UCJF) as to which of the two must defend Grover Cleveland Williams in actions filed against him after an automobile accident and to pay any judgments which may be rendered against him in such actions. The attorneys for the injured persons have shown no interest in the contest, because the maximum amounts which they may recover under the insurance policy and under the UCJF are the same.

The insurance policy involved in this case was issued by Mt. Beacon to Sampson Bright on April 11, 1967, in Maryland. It covered his 1960 Pontiac and contained the following omnibus clause:

"With respect to the insurance for bodily injury liability and for property damage liability, the unqualified word 'insured' includes the named insured and, if the named insured is an individual, his spouse if a resident of the same household, and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or such spouse or with the permission of either."

Bright and his wife lived at 2236 Guilford Avenue, in Baltimore. Their nephew, Grover Cleveland Williams, who was 18 years old in 1967, stayed with them from time to time. Neither Mrs. Bright nor Williams had an operator's license, and Bright had never given permission to either of them to drive his car.

On June 17, 1967, Bright was admitted to the Union Memorial Hospital, some ten blocks due north of his home. He did not go to the hospital in his car, but left it near his house. About 6 p. m. on the following day, June 18, Mrs. Bright asked Williams to drive her to the hospital to visit her husband, taking the keys off the dresser, where Bright had left them. She told Williams to wait for her near the hospital, so that he could drive her home. She gave Williams no other permission to use the car.

Instead of waiting for his aunt, Williams drove south toward their home, met some friends on the street, and agreed to drive them to a house beyond The Alameda, which is east and northeast of the hospital. While driving them toward The Alameda, Williams collided with a parked truck, and several persons were injured. He was not on his way back to the hospital to pick up his aunt when the collision occurred.

The question to be decided is whether the "actual use of the automobile" by Williams was "with the permission of" Mrs. Bright. No one contends that it was with the permission of Mr. Bright.

Courts faced with cases involving deviation from the permission granted have adopted one of three rules: (1) the liberal or "initial permission" rule that if a person has permission to use an automobile in the first instance, any subsequent use while it remains in his possession though not within the contemplation of the parties is a permissive use within the terms of the omnibus clause; (2) the strict or "conversion" rule that any deviation from the time, place or

purpose specified by the person granting permission is sufficient to take the permittee outside the coverage of the omnibus clause; and (3) the moderate or "minor deviation" rule that the permittee is covered under the omnibus clause so long as his deviation from the permissive use is minor in nature. American Home Assurance Co. v. Erie Insurance Exchange, et al., Md., 248 A.2d 887 (1969).[1] See also 7 Appleman, Insurance Law & Practice, sections 4366–4368, pp. 308–327.

■ Since the policy was issued in Maryland, Maryland law controls. Ohio Casualty Ins. Co. v. Pennsylvania Nat. Mut. Cas. Ins. Co., 238 F.Supp. 706 (D. Md.1965), aff'd per curiam, 352 F.2d 308 (4 Cir. 1965). The precise question has not been decided by the Court of Appeals of Maryland, although opinions of that Court and of the Fourth Circuit point to the proper basis of decision. For reasons stated below, this Court concludes that in construing the policy in this case the Court of Appeals of Maryland would adopt the so-called "minor deviation" rule.

In Melvin v. American Auto. Ins. Co., 232 Md. 476, 194 A.2d 269 (1963), the policy contained a so-called "family omnibus" clause, which extended coverage to the named insured and any resident of the same household and any other person responsible for the use of the automobile, "provided the actual use thereof is by a person who is an insured * * * with respect to such automobile * * *." On the evening of the accident the named insured had given his son, Barry, who was a member of his household, permission to use the automobile. No restrictions were placed on its use, nor was anything said about who should drive it. The accident occurred while the automobile was being driven by Alan Melvin, a friend of the son, with the permission of the son, who was riding in the car on their way home. The Court noted that the cases "indicate that 'actual use' means the particular use contemplated when permission is granted and relied on", 232 Md. at 479, 194 A.2d 271, and that some cases turn on a question of deviation from the permission granted, 232 Md. at 481, 194 A.2d at 272. The Court, however, found it unnecessary in that case to discuss the scope of the permission granted, because it held that "the actual use was by Barry, a person insured, and that this fact extended the coverage to Alan, under the terms of the policy in the case at bar". 232 Md. at 480, 194 A.2d at 272.[2] The Maryland

1. The policy under consideration in the *American Home Assurance Co.* case contained an omnibus clause different from the clause in the case at bar, so the decision in that case, holding that the policy in question did not require the company to defend the driver, is not controlling in this case.

2. The Court added:
   "The appellee cites 7 Appleman, Insurance Law and Practice, sec. 4354 as stating: 'The term "actual use", as employed in the present policy, was drafted to confine the coverage to situations where the employment made of the vehicle at the time of the accident was within the scope of the permission granted.' We think it is clear, however, that the policy there referred to was one in which the coverage extended only to persons using the vehicle with the permission of the named insured. Thus, coverage depends in that situation upon the scope of the permission granted. * * *
   "In the instant case Barry was covered as a resident of his father's household, and did not need to rely upon the permission granted. The policy in the instant case is broader than any of the policies in the cases cited by Appleman and relied upon by the appellee. Here the test is use rather than permission. * * * We find it unnecessary to discuss the scope of the permission granted, since that is merely an alternative ground of liability in the instant case." 232 Md. at 480–481, 194 A.2d at 272.
   For similar decisions by the Fourth Circuit, see Ohio Casualty Ins. Co. v. Pennsylvania Nat. Mut. Cas. Ins. Co., 238 F.Supp. 706 (D.Md.1965), aff'd per curiam, 352 F.2d 308 (4 Cir. 1965), and Utica Mutual Ins. Co. v. Rollason, 246 F.2d 105 (4 Cir. 1943).

Court's discussion in the *Melvin* case indicates that such factors as the "scope" of permission granted and the "deviation" from that permission might be relevant in determining whether "actual use" was "with the permission of the named insured." Both of these factors would be relevant only if the "minor deviation" rule were held applicable in Maryland.

A rule similar to the minor deviation rule has been applied by the Maryland Court in cases involving the liability of an employer for the negligence of his employee. See e. g., National Trucking and Storage Co. v. Durkin, 183 Md. 584, 39 A.2d 687 (1944).

In Williams v. Travelers Insurance Co., 265 F.2d 531, (4 Cir. 1959), construing a North Carolina policy, the Court said:

"* * * It is well established in this circuit and elsewhere that a person who is given permission to drive an automobile for a limited purpose does not fall within the scope of the omnibus clause, so as to be within the meaning of the term 'insured', when he goes beyond the permissive use and drives the car for purposes of his own. See Continental Cas. Co. v. Padgett, 4 Cir., 219 F.2d 133; Young v. State Farm Mut. Auto. Ins. Co., 4 Cir., 244 F.2d 333; Farmer v. Fidelity Cas. Co. of N. Y., 4 Cir., 249 F.2d 185. * * *" 265 F.2d at 532.[3]

Counsel for the UCJF Board in this case urges adoption of the "initial permission" rule.[4] They rely particularly on Matits v. Nationwide Mutual Ins. Co., 33 N.J. 488, 166 A.2d 345 (1960), in which the New Jersey Court held: "[I]f a person is given permission to use a motor vehicle in the first instance, any subsequent use short of theft or the like while it remains in his possession, though not within the contemplation of the parties, is a permissive use within the terms of a standard omnibus clause in an automobile liability insurance policy." 33 N.J. at 496–7, 166 A.2d at 349. In support of its conclusion, the majority opinion in that case referred to New Jersey's "comprehensive scheme of motor vehicle legislation designed to assure that persons who cause automobile accidents are able to answer financially to their innocent victims", and "noted that since automobile liability insurance contracts are written solely by the insurer and in face of the legislative purpose to benefit persons injured, such contracts are to be construed liberally in favor of the injured." 33 N.J. at 495, 166 A.2d at 349. The Fund argues that since Maryland also has a comprehensive scheme of motor vehicle legislation designed for the same purpose, including a UCJF statute modeled on the New Jersey Act, the Maryland Court would probably follow the New Jersey law. This Court cannot agree, for several reasons.

3. The *Williams* case is usually cited as authority for the strict, couversion rule. It is certainly authority against the adoption of the initial permission rule, which the UCJF Board asks this Court to adopt. See also Young v. State Farm Mutual Auto. Ins. Co., 244 F.2d 333 (4 Cir. 1957); Farmer v. Fidelity & Casualty Co. of N. Y., 249 F.2d 185 (4 Cir. 1957).

4. The "initial permission" rule, sometimes called the "hell or high water" rule, was originally stated in Stovall v. New York Indemnity Company, 157 Tenn. 301, 8 S.W.2d 473, 72 A.L.R. 1368 (1928). It has been qualified by later cases in Tennessee. See Hubbard v. U.S.F. & G. Co., 192 Tenn. 210, 240 S.W.2d 245 (1951); Foley v. Tennessee Odin Ins. Co., 193 Tenn. 206, 245 S.W.2d 202 (1951); Moore v. Liberty Mutual Ins. Co., 193 Tenn. 519, 246 S.W.2d 960 (1951). See also Young v. State Farm Mutual Auto. Ins. Co., 4 Cir., 244 F.2d 333, 336.

The other case usually cited as authority for the "initial permission" rule, Dickinson v. Maryland Casualty Co., 101 Conn. 369, 125 A. 866, 41 A.L.R. 500 (1924), has been modified in later Connecticut cases. Mycek v. Hartford Accident & Indemnity Co., 128 Conn. 140, 20 A.2d 735 (1941).

It is true, as the Board argues, that the Maryland UCJF Act was patterned on the New Jersey Act, and that the Maryland Court has looked to the New Jersey decisions "for enlightenment", particularly those rendered before the adoption of the Maryland Act, Mundey v. Unsatisfied Claim & Judgment Fund Board, 233 Md. 169, 195 A.2d 720, 2 A.L.R.3d 755, (1963); Unsatisfied Claim and Judgment Fund Board v. Holland, 241 Md. 294, 216 A.2d 525 (1966). But the Court of Appeals of Maryland has not slavishly followed the rulings of the New Jersey Courts; on the contrary, it has carefully examined the Maryland statutes to determine what they require. In *Mundey*, the Maryland Court agreed with the New Jersey Court that the statute should "be liberally construed to advance the remedy, due regard being had for the protection of the fund and the realization of the essential legislative design," [5] but took "a dim view" of the New Jersey Courts' "inflation of the concept of 'physical capability,' " and refused to follow the New Jersey Court. See discussion of *Mundey* in *Holland*, 241 Md. at 298, 216 A.2d at 527. Moreover, Maryland has repeatedly refused to adopt the rule, applied in New Jersey and many other states, that an insurance policy is to be construed most strongly against the insurer. Maryland's position was reiterated in the *American Home Assurance Co.* case, where the Court said:

"In the interpretation of the language of insurance contracts, words are to be given their customary, normal meaning. Offutt vs. Liberty Mut. Ins. Co., 251 Md. 262, 247 A.2d 272 (1968); Harleysville Mut. Cas. Co. vs. Harris & Brooks, Inc., 248 Md. 148, 151, 235 A.2d 556 (1967) and cases there cited." Md., 248 A.2d at 890 (1969).

The courts of the several states, including Maryland, have inferred a general legislative policy to protect the public from uncompensated injury by motor vehicles on the state's highways from the passage of such statutes as financial responsibility laws,[6] compulsory insurance laws,[7] unsatisfied claim and judgment fund laws,[8] motor vehicle security fund laws,[9] or some combination of these laws. Maddy v. Jones, 230 Md. 172, 186 A.2d 482 (1962); Amalgamated Casualty Ins. Co. v. Helms, 239 Md. 529, 212 A.2d 311 (1965).

In states where a compulsory insurance law or a financial responsibility law stands alone, the possibility always exists that an injury will go uncompensated because it does not come within the coverage of the type of policy required by such a statute. In order to minimize this possibility, and thereby maximize public protection, the courts in some of these states have adopted the initial permission rule in construing omnibus clauses.[10]

In Maryland, no similar danger exists. Maryland has adopted the UCJF Act and the Motor Vehicle Security Fund Act,[11] which furnish protection to persons who

---

5. 233 Md. at 173, 195 A.2d at 722.

6. In effect in all the states except Massachusetts.

7. In effect in Massachusetts, New York, and North Carolina.

8. In effect in Maryland, New Jersey, New York, North Dakota, and Michigan.

9. See, e. g., Md.Code, Art. 48A, sec. 482A; N.J. Motor Vehicle Liability Security Fund Law, N.J.S.A. 39:6–92 to 104.

10. *Matits*, supra; Dickinson v. Great American Indemnity Co., 296 Mass. 368, 6 N.E.2d 439 (1937); Konrad v. Hartford Accident and Indemnity Company, 11 Ill. App.2d 503, 137 N.E.2d 855 (App.Ct. of Ill.1956); Boehringer v. Continental Casualty Co., 7 Wis.2d 201, 96 N.W.2d 353 (1959); see also Ball v. Inland Mutual Ins. Co., 121 So.2d 470 (Fla.App.1960) (dissent); Hodges v. Ocean Accident and Guarantee Corporation, 66 Ga.App. 431, 18 S.E.2d 28 (Ct. of App.1941).

11. Those statutory funds are provided by uninsured motorists and by insurance companies doing business in Maryland.

may recover judgments against drivers who are not covered by the omnibus clause in an automobile owner's policy, and are not otherwise protected. Considering Maryland's statutory framework, this Court believes that the Maryland Court of Appeals would find that adoption of the initial permission rule is not required to effectuate Maryland's legislative policy of protecting the public.

The policy involved in this case, i. e., the policy issued to Bright, was not issued to prove "financial responsibility," as that term is used in the Maryland Financial Responsibility Law, since Bright did not fall within any of the classes of persons required to furnish such a policy. Those classes include: (1) taxicabs not operating under permit of the Public Service Commission; (2) commercial motor vehicles for hire; (3) persons renting vehicles to others; (4) owners and operators of motor vehicles after certain convictions; (5) owners and operators of motor vehicles in event of certain judgments; and (6) uninsured owners and operators after certain accidents. See sections 116–122, 137 of Article 66½, Annotated Code of Maryland (1957 ed.). The policy issued to Bright was an ordinary automobile liability policy, covering Bright's automobile, with the omnibus clause quoted above. The policy was listed by Bright to show compliance with the UCJF Act and was undoubtedly issued with that in mind.

The UCJF Act was adopted in Maryland in 1957 and has been amended several times. See Code, Article 66½, sections 150 et seq. As in effect at the time of the accident, and now, section 151 requires that every person registering an "uninsured motor vehicle" in Maryland shall make a specified payment into the UCJF. An "uninsured motor vehicle" is defined in section 150(h) as a motor vehicle "as to which there is not in force a liability policy meeting the require-

ments of section 122." [12] Section 122, which was in force before the UCJF Act was adopted, deals with the security required following an accident unless evidence of insurance is furnished to the Department of Motor Vehicles. Section 122(c) sets out the requirements for an insurance policy sufficient to render unnecessary compliance with the other requirements of section 122. Those requirements "are less in a number of respects than those set forth in Section 131 with regard to insurance policies offered as proof of financial responsibility; but the minimum coverages required for the exception under Section 122 and as proof of financial responsibility under Section 134, which supplements Section 131 as to this important matter, are the same." Citizens Casualty Co. of N. Y. v. Allied Mutual Ins. Co., 217 Md. 494, 501, 144 A.2d 73, 77 (1958).

The requirements of section 122 (which, as we have seen, are all that are necessary to prevent a vehicle from being an uninsured vehicle for purposes of the UCJF Act) do not include an omnibus clause. A fortiori, the UCJF Act does not by its terms require an omnibus clause with any particular wording or breadth.

In Amalgamated Casualty Ins. Co. v. Helms, supra, the Maryland Court, after stating that the Financial Responsibility Act (which, as we have seen, is a more stringent law than the UCJF Act) is remedial legislation and should be liberally construed against insurance carriers in favor of the public, to accomplish its stated purposes, added: "However, construing a statute liberally and adding to it, by judicial fiat, a provision which the Legislature did not see fit to include are not one and the same thing." 239 Md. at 534, 212 A.2d at 315. The Maryland Legislature has not seen fit to require that such a policy as the one issued by Mt. Beacon to Bright contain any partic-

12. The additional language in section 150(h) deals with situations not present here.

ular form of omnibus clause, indeed, any omnibus clause at all.

In practice, however, the Insurance Commissioner will not approve any insurance policy insuring an automobile unless such policy contains an omnibus clause satisfactory to the Commissioner. The policy in this case, including its omnibus clause, was approved by the Commissioner. This omnibus clause provides that its benefits apply only in cases where "the actual use of the automobile is by the named insured or such spouse or with the permission of either."

This Court concludes that the Court of Appeals of Maryland would hold that the words in the policy should "be given their customary, normal meaning," see quotation from *American Home Assurance Co.*, supra, and would construe the term "actual use" to mean "the particular use contemplated when permission [was] granted." *Melvin,* supra, 232 Md. at 479, 194 A.2d at 271.

The minor deviation rule must be applied to the facts of the particular case; under one set of facts it will result in coverage, in another set of facts in non-coverage. In this respect it is not unlike other rules of law. The facts of the present case are that Mrs. Bright gave Williams permission to use the car only to drive her to the hospital and wait there to take her home. At the time of the accident, Williams was operating the car for a purpose entirely foreign to the permission granted, and at a place and time far beyond what was reasonable to expect of one attempting to find a parking place around the Union Memorial Hospital. The actual use by Williams was not a minor deviation from the "particular use contemplated when permission [was] granted and relied on." Consequently, the policy issued by Mt. Beacon to Bright does not insure Williams with respect to that accident and the claims arising therefrom. It follows that the claims against Williams come within the coverage of the UCJF Act. Counsel should prepare a judgment order to that effect.