## MEDEIROS *v.* UNSATISFIED CLAIM AND JUDGMENT FUND BOARD

[No. 483, September Term, 1970.]

*Decided June 30, 1971.*

The cause was submitted on briefs to HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SINGLEY and SMITH, JJ.

Submitted by *Irving S. Reamer* for appellant.

Submitted by *Francis B. Burch, Attorney General, William E. Brannan, Assistant Attorney General, David D. Patton* and *Lloyd A. Dreiling* for appellee.

BARNES, J., delivered the opinion of the Court.

The appellant, John J. Medeiros, 53 years of age, while a pedestrian was struck by a hit and run driver of an automobile on March 16, 1968, at the intersection of Clifton and Chelsea Terrace in Baltimore City. Not having given the appellee, the Unsatisfied Claim and Judgment Fund Board (the Fund), notice of his intention to make a claim against the Fund within 180 days of the time of the accident as provided in Code (1970 Repl. Vol.), Art. 66½, § 7-606 (a)—formerly § 154(a) of Art. 66½— Ch. 836 of the Laws of 1957, as amended, Medeiros contends that he comes within the statutory provision that in lieu of that notice, he proved at the hearing on his application to the Superior Court of Baltimore City (Grady, J.) for leave to sue the Fund that "he was physically incapable of giving the notice within the period and that he gave the notice within 30 days after he became physically capable to do so." Judge Grady, in a carefully considered memorandum filed after the taking of testimony and the consideration of memoranda submitted by counsel for the respective parties, found as a fact that Medeiros "was physically capable of communicating with those around him concerning his affairs in general and was physically capable of giving the required notice of claim to the Fund during the critical period." He denied his petition for leave to sue the Fund for this reason. The sole question presented to us is whether Judge Grady's findings of fact were clearly erroneous, see Maryland Rule 886, and his conclusion, based on those findings, was in error. Finding no error, we shall affirm the lower court's order of October 30, 1970, denying leave to sue the Fund.

The appellant, Medeiros, was quite seriously injured as a result of the accident. Judge Grady in his opinion in the lower court summarized the extensive hospital reports as follows:

"Plaintiff [Medeiros] was removed from the

scene of the accident on March 16, 1968, by ambulance and taken to the Lutheran Hospital. He was found to have sustained a compound fracture, left femoral shaft and condyles; comminuted fracture of left humerus; fracture of pelvis (left pubic remi and sacro-iliac joint); rupture of prostatic urethra; and rupture of bladder. On April 2 and April 10, 1968, plaintiff underwent surgery to repair the fractures of the femur and pelvis. On May 28, 1968, he was discharged from Lutheran Hospital in satisfactory condition and transferred to Montebello State Hospital for continued convalescence, where he remained until October 30, 1968. On that date he was taken to the University of Maryland Hospital where the pin which had been used in the reduction of the femoral fracture was removed. Plaintiff was returned to the Montebello State Hospital where he remained until at least August 7, 1969."

Medeiros submitted evidence indicating that his notice of claim was filed through his counsel on November 11, 1968, after Medeiros had communicated with counsel through a friend from whom he first learned, while at the University Hospital (October 30, 1968, through November 5, 1968), that Medeiros might have a claim against someone.

There was also evidence in the lower court that Officer William Booz, of the Accident Investigation Division, Baltimore City Police Department, investigated the accident after having been called by another pedestrian who had seen the accident. Officer Booz obtained information from the pedestrian that the hit and run car was a late model Cadillac convertible, white in color, which appeared to have been driven by a black male, who could not be described more fully. The license number of the car was not obtained. Medeiros was in a serious condition and Officer Booz did not think he would survive.

While at the Lutheran Hospital, however, Medeiros telephoned Officer Booz (he could not recall the date) and informed the officer that a man in a grocery store on Clifton Avenue might have some information in regard to the accident. Officer Booz went to see Medeiros at the Lutheran Hospital—apparently in March, 1968—and Medeiros gave Officer Booz the first name of the man who operated a grocery store on Clifton Avenue. Officer Booz found the grocer but he knew nothing of the accident. Medeiros was at the Lutheran Hospital from March 16, 1968, until May 28, 1968, when he was discharged in satisfactory condition and transferred to Montebello State Hospital. While at Montebello on July 30, 1968 (135 days after the accident), Medeiros, on his own signature, made application to the Federal Department of Health, Education and Welfare for a disability pension.

Prior to the accident, Medeiros had received rather extensive medical treatment. In 1959, he had been treated at the University Hospital for a long standing ear infection. At that time he had a high school education and was diagnosed as having a "passive aggressive" personality. He had been at the Sheppard Pratt Hospital in 1942 for treatment for an anxiety neurosis which was improved by psychotherapy. He suffered a second break down in 1951, diagnosed as a manic depressive psychosis and was treated at Sheppard Pratt and at the Spring Grove State Hospital. In 1935 and 1955 three frontal lobotomies were done. In 1957 he had grand mal seizures and had such a seizure one month prior to his admission to the University Hospital in 1959 for treatment for the ear infection, already mentioned. There is, however, nothing in any of the medical records that Medeiros was not mentally equipped to attend to his affairs in general.

In our opinion, the case of *Mundey v. Unsatisfied Claim & Judgment Fund Board,* 233 Md. 169, 195 A. 2d 720, 2 A.L.R.3d 755 (1963) is dispositive of the present case.

In *Mundey,* although the injuries to Mundey were not

as extensive as those suffered by Medeiros, like the present case, the plaintiff was able to communicate during the critical notice period, was able to file claim forms and was not incapacitated from attending to his affairs in general. His failure to file the required notice with the Fund "was attributable to a lack of knowledge rather than a lack of ability." (233 Md. at 172, 195 A. 2d at 722.) *Mundey* sought to rely on the decision of the Supreme Court of New Jersey in *Giacobbe v. Gassert,* 29 N. J. 421, 149 A. 2d 214 (1959) because the applicable Maryland statute is modeled upon the New Jersey statute. In *Giacobbe,* the New Jersey statute was construed to mean that to show "physical disability" to give notice of the claim it was sufficient if "because of the physical injuries and their treatment and preoccupation with his affliction and fear of evil consequences, the victim of the mishap was not mentally and emotionally adjusted to his responsibility of giving notice." This Court, however, expressly declined to follow this construction of the Maryland statute urged by the plaintiff in *Mundey* and held that, even though the statute is to be liberally construed to effectuate its social purposes, "physical disability" in the Maryland statute meant what those words ordinarily and generally mean and not the broader meaning given them by the Supreme Court of New Jersey in *Giacobbe.* Judge Henderson, for the Court, in *Mundey* stated:

> "We think the words 'physically incapable of giving notice' clearly import a greater incapacity than mere inability to give notice in person or to give notice only with difficulty. The mere fact that a patient is hospitalized, or confined to bed and a wheel chair, would not necessarily prevent communication. In 2 *Merrill on Notice* (1952), sec. 832, the author states: '* * * confinement to bed or to home should not be considered as conclusively excusing a failure to notify * * *. The test should be whether the notifier is incapacitated from attending to his affairs in

general.' (footnotes omitted) See also *Grys v. Motor Vehicle Accident Indem. Corp.*, 220 N.Y.S.2d 653 (N.Y.App.Div., (1961))." (233 Md. at 172, 195 A. 2d at 721.)

\* \* \*

"We see no basis for our attributing to the General Assembly an intention to be more generous than the ordinary meaning of the words it employed would import. If it desires to go further, it can, of course, readily amend the statute. The question of social policy, in our estimation, is peculiarly appropriate for legislative, not judicial, determination." (233 Md. at 174, 195 A. 2d at 723.)

In the present case, Medeiros, while in the hospital, called the police officer to come to see him so that he could give the officer information which would possibly lead to the identification of the hit and run car. After that Medeiros signed forms to obtain a disability pension for the federal Social Security benefits. He was ambulatory during most of his hospitalization. There is no record or evidence that he was incapable of attending to his affairs in general.

The instant case is to be distinguished from our decision in *Unsatisfied Claim and Judgment Fund Board v. Mosley*, 234 Md. 386, 392, 199 A. 2d 366 (1964) in which, in addition to severe physical injuries resulting from the accident, Mosley suffered organic brain damage at the time of the accident and was " 'confused, unconcerned [and] disinterested' when he entered a mental hospital two years after the accident"; he displayed no " 'form' or 'insurance' consciousness" during the period after the accident.

The evidence in the present case, in our opinion, supports the findings of fact made by Judge Grady and these findings were not clearly erroneous. His conclusion that Medeiros had not established that he was physically in-

16

capable of giving notice was in accordance with the applicable Maryland Law.

> *Order of October 30, 1970, affirmed, the appellant to pay the costs.*