The OHIO CASUALTY INSURANCE COMPANY, a body corporate, Plaintiff,

v.

PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY, a body corporate, and Morton D. Goldman, a minor, by William Goldman, his father and next friend, and William Goldman, Jacqueline Marie Krasauskas, infant, and John W. Krasauskas, father and next friend, Defendants.

Civ. A. No. 15567.

United States District Court
D. Maryland.

Feb. 17, 1965.

Robert E. Coughlan, Jr., and Alva P. Weaver, III, Baltimore, Md., for plaintiff.

Donald L. Allewalt, Baltimore, Md., for Pennsylvania National Mutual Casualty Ins. Co., defendant.

Stanley Klavan, Silver Spring, Md., for Jacqueline Marie Krasauskas, Infant and John W. Krasauskas, father and next friend.

WINTER, District Judge:

The Ohio Casualty Insurance Company ("Ohio") seeks a declaratory judgment that a policy of insurance of Pennsylvania National Mutual Casualty Insurance Company ("Pennsylvania") is applicable to an automobile accident which occurred on Sunday, November 3, 1963, at two A. M. The vehicle with which the case is concerned is a 1961 Ford Falcon automobile, owned by Mrs. Mary W. Shackert, to whom Pennsylvania issued a policy as the named insured, with an endorsement extending certain additional coverages to her minor son, Charles Schackert. At the time of the accident the vehicle was operated by Andrew Poffel, a friend and former classmate of the son. Ohio also seeks to recover counsel fees and expenses which it has incurred to date in defense of personal injury claims asserted by Morton David Goldman and Jacqueline Marie Krasauskas— the latter being a passenger in Mrs. Schackert's car at the time when it was being operated by Poffel.

The parties have stipulated that prompt notice of personal injury claims was given to Pennsylvania, that Pennsylvania investigated but disclaimed liability as to Poffel, that if the Pennsylvania policy is applicable, Pennsylvania, as between Ohio and Pennsylvania, is the primary insurer up to the limits of its policy, and Ohio is the excess insurer, and that if its policy is applicable, Pennsylvania is liable to Ohio for $975.70, counsel fees and expenses.

A decision of the case involves a construction of the following provisions of the Pennsylvania policy, in the light of the facts proved by the depositions of Mrs. Schackert, her son and Poffel. Pennsylvania's policy provides that the insurance which it affords shall extend to "persons insured," defined as:

*"Persons Insured.* The following are insureds under Part 1 [Liability]:

(a) with respect to the owned automobile

(1) the named insured and any resident of the same household,

(2) *any other person using such automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission,* and

(3) any other person or organization but only with respect to his or its liability because of acts or omissions of an insured under (a)(1) or (2) above." (emphasis supplied)

Since Poffel was not a named insured, or residing in Mrs. Schackert's household, the specific question to be decided is whether Poffel was " * * * using such automobile with the permission of the named insured * * *." Since Poffel had no express permission from Mrs. Schackert, it must be determined if he had implied permission, i. e., whether Schackert, the first permittee, could authorize Poffel, the second permittee, to use the vehicle, under the following facts:

Mrs. Schackert and her son reside in Baltimore County. Schackert went to high school with Poffel and, after graduation, they both matriculated at the University of Maryland, College Park, Maryland, and were roommates during their freshman year. Schackert failed to

meet the academic standards of the University at the close of his freshman year and his attendance at the University was terminated. During the following school year he went to the campus of the University of Maryland during the week-end of November 2 and 3, 1963 to attend a football game and homecoming events, and stayed with his former roommate, Poffel.

Mrs. Schackert gave her son specific permission to take the vehicle to College Park for the week-end. No express limitation was placed on his use of the vehicle. He had had continuing general permission to use it at any time that his mother was not using it; he was employed; he made contributions to the family expenses; and he bought gasoline for the car from time to time.

After a football game on the Saturday of the weekend, Schackert and Poffel were on a "double date." Schackert drove the young lady who was his "date" to her home, then Poffel requested Schackert's permission to use the automobile to take Miss Krasauskas to her home. The permission was given; Schackert did not accompany them; and while driving the vehicle Poffel was involved in an accident which gave rise to the personal injury claims.

Mrs. Schackert had known Poffel as a friend of her son over a period of six years. She had never been requested to give, nor given, permission to let Poffel operate her automobile. She was not aware that her son ever permitted anyone else to operate the motor vehicle when it was entrusted to his use, but, at least on this occasion, she did not tell her son "not to let anyone else drive the car."

At the outset, consideration must be given to the law to be applied. In the exercise of diversity jurisdiction a district court looks to the law of the state in which the court sits to determine what conflict of laws rule is applicable, Ohio Casualty Insurance Company v. Ross, 222 F.Supp. 292 (D.C.Md.1963). Maryland law is that an insurer's liability under an automobile liability policy is to be determined in accordance with the law of the place where the contract was entered into, and where the contract provides, as does Pennsylvania's policy in the instant case, that it is not valid until countersigned by "* * * a duly authorized representative of the company," the place of countersigning is held to be the place of making the contract, Ohio Casualty Insurance Company v. Ross, supra, (p. 295). The copy of Pennsylvania's policy in evidence here does not show what duly authorized representative of Pennsylvania countersigned the policy, but the parties make no contentions on this possible issue, and it will be assumed that, in accordance with Annotated Code of Maryland, Article 48A, § 59, the policy was countersigned by a licensed agent resident in Maryland, that, hence, it was countersigned in Maryland, and that Maryland law applies.

This conclusion leads to additional problems, because there is no direct decision of the Maryland Court of Appeals deciding whether, or under what circumstances, a second permittee becomes an insured under an omnibus clause, although, on facts tantalizingly similar to those found in the case at bar, the Maryland Court of Appeals has found coverage under policy provisions concededly not applicable here, and has declined to rule on whether coverage might have been found on the theory advanced in this case, Melvin v. American Automobile Insurance Company, 232 Md. 476, 194 A.2d 269 (1963). See also, Hardware Mutual Casualty Company v. Mitnick, 180 Md. 604, 26 A.2d 393 (1942). The function of this Court, therefore, is to make an informed prediction of what the Maryland law will be when the matter is decided by the Maryland Court of Appeals.

An analysis of three decisions of the United States Court of Appeals for the Fourth Circuit leads this Court to the conclusion that Schackert, under the general and specific permission given by his mother, legally could and did authorize Poffel to use the car, so that Poffel is deemed to have used the car with the

permission of the named insured and, hence, is an insured under Pennsylvania's policy. These decisions are: Utica Mutual Insurance Company v. Rollason, 246 F.2d 105 (4 Cir.1957), and two earlier decisions on which it relies, Chatfield v. Farm Bureau Mut. Auto. Ins. Co., 208 F.2d 250 (4 Cir.1953), and Harrison v. Carroll, 139 F.2d 427 (4 Cir.1943). In the Utica case, which concerned the law of Virginia, the question was whether the district judge correctly refused to direct a verdict on the issue of whether an employee whose employer had provided him with an automobile had implied authority to permit his son to drive the vehicle. The father lent the car to his two sons for social purposes and while it was operated by one an accident occurred, which gave rise to litigation. There was conflicting evidence as to whether the employer in furnishing the automobile to the father restricted its use to transportation in connection with the father's employment, but, in holding that the question of the father's implied authority to lend the car to his son was properly a jury question, the court made the following statement (246 F.2d p. 110):

> "* * * If an insured automobile is left by the owner with someone for general use and he in turn permits its use by another, the use is deemed to be with the permission of the owner. Robinson v. Fidelity & Casualty Co. of New York, 1950, 190 Va. 368, 57 S.E.2d 93; Liberty Mutual Insurance Co. v. Tiller, 189 Va. 544, 53 S.E.2d 814; Hinton v. Indemnity Ins. Co. of North America, 175 Va. 205, 8 S.E.2d 279; Employer's Liability Assurance Corp. v. Carroll, 4 Cir., 139 F.2d 427; Indiana Lumbermen's Mutual Ins. Co. v. Janes, 5 Cir., 1956, 230 F.2d 500, applying Virginia law; Trotter v. Union Indemnity Co., 9 Cir., 35 F.2d 104; Odden v. Union Indemnity Co., 156 Wash. 10, 286 P. 59, 72 A.L.R. 1363."

Following this statement, the court called attention to the fact that the omnibus clause containing language like that in Pennsylvania's policy in the case at bar was required to be included in the policy by Virginia statute, and that the highest court of Virginia had construed the statute to be remedial and said that it should be liberally interpreted, as did Judge Dobie, speaking for the United States Court of Appeals for the Fourth Circuit in the Chatfield case, hereinafter discussed.

Like Virginia, Maryland has a statute requiring the inclusion of an omnibus clause in a policy of automobile insurance offered as proof of financial responsibility. Since the enactment of Chapter 437 of the Acts of the General Assembly of 1961, Maryland has required all motorists to establish proof of financial responsibility as a condition of yearly licensing of any motor vehicle, or, in the alternative, to pay a special fee into the Annotated Code of Maryland, Article 66½, Unsatisfied Claim and Judgment Fund. § 131(a) (3), requires such a policy to "* * * insure any person using or legally responsible for the use of any motor vehicle described in the said policy, when such use is with the permission of the insured person named in the said policy * * *."

The Chatfield case arose when a husband, who owned an insured vehicle, and who, together with his wife, operated a motion picture theater, was stricken with a heart attack. The wife could not operate a vehicle. During the husband's illness, the wife permitted an employee of the motion picture enterprise to drive her husband's car, ostensibly to obtain an electrical switch for a motion picture projection machine. In the course of the journey the employee was involved in an accident, and the question arose as to whether the insurance obtained by the husband for his car covered the employee when the policy contained a provision that it was applicable " 'to any person while using the automobile * * * provided the actual use of the automobile is by the named insured or with his permission.' " The district court directed a verdict for the insurer, which was reversed on appeal and a new trial granted. In arriving at this result, Judge Dobie, speaking for the Court, reviewed a welter

of cases dealing with omnibus clauses and called attention to the fact that, while many depend upon their peculiar facts, they are, nevertheless, irreconcilable. He also called attention to the North Carolina motor vehicle financial responsibility law (North Carolina law being controlling) requiring an omnibus clause in every owner's policy of insurance in order to comply with the act, and stated (208 F.2d p. 256):

> "Our own decisions, we think, show a strong tendency toward a liberal interpretation, in favor of the insured, of the 'omnibus clause.' This clause should not be construed and applied, from a purely analytical viewpoint, under a literal interpretation of the words of the policy.

> "The spirit, not the letter, should control. Statutes requiring the insertion of the 'omnibus clause' in automobile liability policies reflect a clear cut policy to protect the public. They should be construed and applied so as to carry out this policy."

Finally, Harrison v. Carroll, supra, arose when a mother, as was her custom on Sundays, lent her automobile to her minor son, who invited three other boys to ride with him. The group drove to the neighborhood of Danville, Virginia, where they purchased liquor and became intoxicated. While in this condition, the son gave permission to one of his guests to drive the car into town to determine what moving pictures were being shown. The son did not accompany his guest and the guest, while on this errand, was involved in an automobile accident wherein two persons were killed. The district court held the mother's insurer liable to the limits of its policy and, in affirming this judgment, Judge Soper, writing for the Court, stated (139 F.2d p. 429):

> "* * * but the District Judge found upon sufficient evidence that the car had been driven by another person than her son to her knowledge on at least one prior occasion and that her authority to her son to use the car on Sundays for his own purposes and his own pleasure was so broad as to imply her consent to its use in any ordinary manner that he might see fit. We agree with the District Judge that the temporary loan of the car by the son to Going in order that he might make the short run to Danville and return for the common purposes of the group was well within the scope of the express permission granted by the owner to her son."

Factually, each of these cases can be distinguished from the case at bar, but Harrison v. Carroll, supra, is close. In both cases, the first permittee was not in the car at the time of the accident. While it is true that there may have been stronger evidence in Harrison that the named insured might reasonably anticipate that her son would lend the car to a third party than in the instant case, this factor is to some degree counterbalanced by the consideration that she could hardly be presumed to consent to lending the car to an intoxicated person. The only distinction remaining is that it is easier to find that the guest (Going) in Harrison was about a common purpose of the group than was Poffel about a purpose of Schackert's when Poffel was returning his companion to her home. Nevertheless, these cases show the breadth of the proposition expressed in the Utica Mutual Insurance Company v. Rollason case, supra, namely, that when an insured automobile is left by the owner with someone for general use and he in turn permits its use by another the use is deemed to be with the permission of the owner. There are authorities which dispute the correctness of this rule, for example, see 7 Appleman, Insurance Law and Practice, § 4361, and cases cited therein; Annotation 160 A.L.R. 1210. There are also authorities supporting this proposition, State Farm Mutual Automobile Ins. Co. v. Williamson, 331 F.2d 517 (9 Cir.1964); Indiana Lumbermen's Mutual Ins. Co. v. Janes, 230 F.2d 500 (5 Cir.1956); Baesler v. Globe Indemnity Co., 33 N.J. 148, 162 A.2d 854 (1960). In Melvin v. American Automobile Insurance Co., supra, the Maryland Court of Appeals, in stat-

ting the contention on which it would not pass, made reference to 7 Appleman, Insurance Law and Practice, supra, which states that the ordinary rule is that the bailee of an automobile cannot validly permit a third person to operate the vehicle so as to bring such third person within the policy protection, but, perhaps significantly, the Court added, "We may note that there are many cases to the contrary." And this Court notes that the majority of those cases to the contrary are more recent than Appleman's 1942 statement of the "ordinary rule."

In any event, in the absence of a direct Maryland decision, but in the presence of the mandatory Maryland statute requiring an omnibus clause in each policy of automobile insurance, I am of the view that under the facts of this case the Maryland Court of Appeals would hold that Schackert had implied authority to authorize Poffel to drive Mrs. Schackert's car, that Schackert gave permission to Poffel therefor, that legally Poffel was authorized by Mrs. Schackert to operate the vehicle, and that, hence, the coverage of Pennsylvania's policy extends to Poffel.

Counsel may prepare a declaratory decree giving effect to the views expressed herein, and awarding plaintiff $975.70 and court costs.