Norman W. WEHLAND, Jr., a minor, by Norman W. Wehland, his father and next friend, to his own use and to the use of the Harleysville Mutual Insurance Company, a body corporate of Harleysville, Pennsylvania

v.

NATIONWIDE MUTUAL INSURANCE COMPANY, a body corporate.

Civ. No. 18777.

United States District Court, D. Maryland.

Dec. 15, 1971.

David D. Patton, Balimore, Md., for plaintiff.

M. King Hill, Jr., and Michael A. Pretl, Baltimore, Md., for defendant.

FRANK A. KAUFMAN, District Judge.

Plaintiff, Wehland, a minor, by his father and next friend, suing for his own use and for the use of Harleysville Mutual Insurance Company (Harleysville), seeks damages from defendant, Nationwide Mutual Insurance Company (Nationwide), alleging that Harleysville discharged to certain third parties a liability of Wehland, which should have been paid by Nationwide. The facts in this case, in which diversity jurisdiction exists,[1] are not in dispute. Accordingly, the parties have filed cross-motions for summary judgment.

On July 21, 1969, Nationwide issued its automobile liability insurance policy to Grover Edwin Jones, a citizen of Maryland, covering as an owned automobile a 1955 Chevrolet sedan, the title to which was in the name of Grover Edwin Jones, but, which this Court concludes, was owned by his son, Bennie.[2] At or about the same time at which Nationwide issued its aforesaid policy to Jones, the father, it also issued to Bennie, as an operator, a JR–11 Certificate of Financial Responsibility.[3]

---

1. Wehland is a citizen of Maryland; Harleysville is a Pennsylvania corporation with its principal place of business in that State; and Nationwide is an Ohio corporation with its principal place of business in that State. The amount in controversy is alleged to be $20,657.40 (the amount Harleysville paid to discharge a liability of its insured, Wehland, plus interest.) See n. 4 *infra*.

2. In a pretrial memorandum filed in this case on September 19, 1968 and signed by counsel for both plaintiff and defendant, the vehicle in question was described as "an automobile owned by Eddie Jones," i. e., Grover Edwin Jones. And in a memorandum filed in this case by plaintiff on October 15, 1968, Grover Edwin Jones was referred to as "the owner of the automobile." However, in a supplemental memorandum filed in this case by plaintiff on October 5, 1970, it is stated: "It is clear and conceded by Nationwide that Bennie D. Jones was the owner of the auto involved . . . ." As for the defendant, it was stated in a memorandum filed in this case and dated October 1, 1970, that, while the vehicle

was titled in the name of Grover Edwin Jones, it was "actually purchased and owned by the latter's son, Bennie Jones." In a Statement of Agreed Facts, and Facts in Dispute, filed in this case on March 24, 1971, the parties stated as an agreed fact that the automobile "had been purchased by Bennie Jones and was titled in the name of his father, Grover Edwin Jones." Finally, in a letter to this Court dated October 7, 1971, counsel for defendant stated that he recently had been informed by Grover Edwin Jones that the 1955 Chevrolet was purchased in 1964 for $400; that "Bennie Jones paid most of the purchase price in cash, and gave a personal note to the dealer for the small balance"; that Bennie "paid off the note in full out of his own earnings prior to the accident"; and that Grover Edwin Jones "at no time contributed toward his son's purchase of the vehicle." For the legal effect of those facts, see n. 6 *infra*.

3. Both the principal Nationwide policy and the aforesaid JR–11 endorsement were in effect at all times relevant herein. The JR–11 Certificate was filed with

During the evening of January 29, 1965, Bennie gave the plaintiff (Wehland) permission to drive the Chevrolet, with Bennie as a passenger in the right front seat, and with other passengers in the car. At some point after Wehland began to drive the car, and for a reason not disclosed in the record, a Maryland State Police car, with its red dome light flashing and with its siren sounding, began pursuing the Chevrolet which Wehland was driving. In an apparent attempt to escape that pursuit and despite the alleged protestations of Bennie and of the other passengers and their alleged efforts physically to seize control of the Chevrolet, Wehland accelerated the speed of the Chevrolet as he approached an intersection which was controlled by an automobile traffic signal which was red for cars proceeding in the direction in which Wehland was moving. Wehland's flight came to a sudden, tragic end when he either failed to see or disregarded the red signal and the Chevrolet collided with a second automobile which came into the intersection from another direction. In the collision, Bennie and the driver of the second automobile were killed and the other occupants of the Chevrolet were injured, as was a passenger in the second car.

At the time of the accident, Wehland was insured under the JR–11 endorsement to an automobile liability insurance policy issued to his father by Harleysville. After Nationwide took the position that its policy did not afford coverage to Wehland, Harleysville, on behalf of its insured, Wehland, settled all outstanding claims arising from the accident.[4]

The question presented in this case is whether Nationwide's policy covers Wehland's operation of the Chevrolet. Because this Court's answer to that question is "no," it is not necessary for this Court to consider whether Nationwide's coverage, if the same existed, was primary or secondary to, or concurrent with, Harleysville's coverage.

Both the Nationwide and Harleysville policies were issued in Maryland. Accordingly, Maryland law applies in this case. Travelers Corp. v. Kaminski, 304 F.Supp. 481 (D.Md.1969); Mt. Beacon Ins. Co. v. Williams, 296 F.Supp. 1094 (D.Md.1969); Ohio Cas. Ins. Co. v. Pennsylvania Nat. Mut. Cas. Ins. Co., 238 F.Supp. 706 (D.Md.), aff'd per curiam, 352 F.2d 308 (4th Cir. 1965).

The Nationwide policy provided personal injury and property damage coverage for the policyholder, namely, Grover Edwin Jones, any resident of his household, and any person or organization legally responsible for the use of the automobile described in the policy, in this case the Chevrolet, "provided such use and actual operation was with the permission of the Policyholder or his spouse if such a resident." Wehland was not the policyholder, nor was he a resident of the same household as the policyholder, Jones. Nor did Wehland operate the Chevrolet with the effective permission of the policyholder or his spouse.[5]

---

the Maryland Department of Motor Vehicles in accordance with the then existing requirements of Md.Ann.Code art. 66½, § 93, since replaced by the provisions which are currently set forth in Md. Ann.Code art. 66½, § 6–107.

4. Harleysville settled claims totalling $19,-943.25 and incurred an additional expense in the amount of $714.15 in defending actions in connection with such claims.

5. Under the heading "Use of Other Land Motor Vehicles," the policy provided, *inter alia*, coverage for "Property Damage & Bodily Injury—Liability," but did not, under that heading, provide any coverage

which is not otherwise provided by the policy. In addition, it is clear that none of the provisions under that heading is applicable in this case because the Chevrolet *was* the automobile described in the policy and was *not* a substitute for the described automobile and also because the Chevrolet was not owned either by the policyholder, Grover Edwin Jones, or his spouse, for *any* period of time. In addition, the insurance against property damage and bodily injury liability which is afforded by the policy under that heading only comes into play when the "other land motor vehicle . . . is not owned by [the] Policyholder or any member of

In construing policies substantially similar to the policy Nationwide issued to Grover Edwin Jones, that is, a policy which provides for coverage of a permittee if he is granted permission to operate a covered car by the policyholder or his spouse, the Court of Appeals of Maryland has held that permission by any such policyholder or his spouse is ineffective unless that policyholder or his spouse is the owner of the car, or is someone entitled to the possession and use of the car, such as, for example, a lessee. In other words, the Court of Appeals of Maryland has held that no one can grant permission unless he has the legal power and right to grant or to withhold permission. Keystone Ins. Co. v. Fidelity & Cas. Co. of New York, 256 Md. 423, 260 A.2d 275 (1970); Unsatisfied Claim & Judgment Fund v. United States Fidelity & Guaranty, 256 Md. 412, 260 A.2d 279 (1969); Selected Risks Ins. Co. v. Miller, 227 Md. 174, 175 A.2d 584 (1961).

In the *Keystone* case, the car in question was purchased by a minor and titled in the name of the mother of the minor. A JR–11 endorsement had been issued to cover that minor son. Judge Smith, writing for the Court of Appeals of Maryland and citing Mills v. Judd, 256 Md. 144, 259 A.2d 267 (1969), concluded (256 Md. at 431, 260 A.2d at 279) that "the presence of the JR–11 in no way changes the situation here." [5a] Judge

Smith also wrote in the *Unsatisfied* case as follows (256 Md. at 422, 260 A.2d at 284):

The only difference between this case and the cases generally holding that consent by one who is not a named insured, even though he is the owner, is not sufficient to create the coverage, is that here the son lived in the home of the named insured and the father had co-signed the note. In the other cases, the same factors of insurance in the name of the named insured and tags in the name of the named insured would have been present. The fact that the son lived in the household of his parents, and that the father had co-signed a note would not effect sufficient change to grant to the father such right of control over the vehicle as to be able to deny the use of the vehicle to the son who was the actual owner. Accordingly, we hold that as a matter of law there was not sufficient evidence adduced to warrant submission to the jury of an issue as to whether the father had such an interest in the vehicle that he was entitled to the right of possession and control of it. Therefore, Judge Watts was entirely correct in granting the motion for judgment *n. o. v.* on the strength of the holding of this Court in Selected Risks v. Miller, *supra*, now buttressed by our holding today in Keystone Ins. Co. v. Fidelity & Cas. Co., *supra*.[6]

the same household" with certain inapplicable exceptions. Bennie, the owner of the Chevrolet, was a member of the same household as his father, the policyholder; thus, even if the Chevrolet could possibly be considered an "other land motor vehicle," the insurance afforded under the heading of the policy entitled "Use of Other Land Motor Vehicles" is inapplicable. In sum, an analysis of the section of the policy under the said heading "Use of Other Land Motor Vehicles" shows that none of the provisions thereof are applicable herein.

5a. In addition, *see* Travelers Corp. v. Kaminski, *supra*, 304 F.Supp. at 492–497.

6. There is no indication in this case that the father had such control over the Chev-

rolet or the use of the Chevrolet by Bennie as would permit this Court, within the context of the above-quoted language of Judge Smith in *Unsatisfied*, to hold that the father was a person in the same category as an owner or lessee, or was a person who otherwise possessed the right and authority to grant or to withhold permission for use of the Chevrolet by Bennie or by any other person. See n. 2 *supra*.

In Travelers Corp. v. Kaminski, *supra*, 304 F.Supp. at 489 n. 4, this Court distinguished *Selected Risks* and held that the parents of the minor were, at the least, "joint owners" with their minor son. This Court, at the time of the writing of this opinion, presently doubts whether it has the authority, as a factfinder, to

In *Keystone*, Judge Smith discussed Melvin v. American Auto. Ins. Co., 232 Md. 476, 194 A.2d 269 (1963), and noted (256 Md. at 430, 260 A.2d at 278):

> \* \* \* In *Melvin* coverage was held to exist under the omnibus clause because the son there involved was an "insured" within the terms of the policy as a resident of the same household; he was in the car at the time of the accident, although not operating it; and the car was on his mission at the time. Judge (later Chief Judge) Henderson there said for the Court:
>
> > "Here the test is *use* rather than permission." *Id*. at 480 of 232 Md. at 272 of 194 A.2d. [Emphasis supplied by Judge Smith.]

In *Melvin*, the American Automobile Insurance Company policy stated that "the named insured and any resident of the same household," as well as "any other person using such automobile, provided the actual use thereof is with the permission of the named insured" was an insured under the policy; and, in addition, provided (at 478, 194 A.2d at 271):

> (c) *Any other person* or organization *legally responsible for the use of (1) an automobile* or trailer *not owned* or hired *by such person* or organization, or (2) a temporary substitute automobile, *provided the actual use thereof is by a person who is an insured under (a) or (b) above with respect to such automobile* or trailer. \* \* \*." [Emphasis supplied by Judge Henderson.]

After so noting, Judge Henderson wrote (at 478, 194 A.2d at 271):

> It is conceded that Barry Brotman was an insured, as a resident of the household of the named insured under (a) (1). He could probably qualify under (a) (2), as a person actually using the owned automobile with the permission of the named insured, al-

though we need not so decide. The question is, however, whether Alan was covered, and the appellant contends that he is, under (c) (1), as a person legally responsible for the use of an automobile, not owned or hired by such person, because he fulfills the condition that "the actual use thereof is by a person who is an insured under (a) or (b)." The contention is that the actual use at the time of the accident was by and for the benefit of Barry, an insured under (a) (1). The appellee on the other hand, argues that the "actual use" was by Alan, and not by Barry, because Alan was actually operating the car at the time of the accident.

In *Melvin*, the car was owned by Barry's father, and was operated by Alan W. Melvin. Barry drove the car to a party. Returning from the party, Barry arranged with Alan for the latter to drive because Barry was tired. Barry travelled in the car as a passenger with Alan at the wheel. In the ensuing accident which occurred while Alan was driving, Barry was killed.

Judge Henderson held (at 480, 194 A.2d at 272) that "the actual use was by Barry, a person insured, and that this fact extended the coverage to Alan, under the terms of the policy in the case at bar." In so doing, Judge Henderson relied on the definition of an insured set forth under (c) of the policy and quoted hereinabove in the text of this opinion.

The *Melvin* decision is inapplicable in this case, not because Bennie, as a passenger in the Chevrolet being driven by Wehland by arrangement with Bennie, may not have "used the car," but because the equivalent of the "(c)" clause relied on by Judge Henderson in the *Melvin* case appears in a substantially different form in the Nationwide policy. The clause in the Nationwide policy covers—

---

make the finding of fact it made in *Kaminski* with regard to joint ownership, in view of Judge Smith's afore-quoted statement in *Unsatisfied* that "as a mat-

ter of law there was not sufficient evidence" in that case to permit a substantially similar finding.

any person or organization legally responsible for the use of the described automobile, provided such use and actual operation was with the permission of the *Policyholder or his spouse if such a resident.* [Emphasis supplied.]

The American policy at issue in the *Melvin* case applied to use by any person who is *an insured.* By way of contrast, the Nationwide policy at issue in the within case provides coverage only when such use is with the permission of the *policyholder, or his spouse, if such a resident.*[7] In this case, while Bennie was a resident of the household of the policyholder (namely, the household of his father), the use and operation of the automobile by Wehland was "with the permission of" Bennie, who was not "the Policyholder" or the resident spouse of the policyholder. It could perhaps be contended that Wehland was the second permittee of Grover Edwin Jones, the policyholder, or of the latter's spouse, i. e., that Grover or his spouse gave general permission to Bennie and that Bennie, as the first permittee, gave permission to Wehland. But any such second permission would be immaterial herein because neither Grover nor his spouse, as discussed *infra,* had the power or right to grant or withhold permission to Bennie to use the Chevrolet himself or permit Wehland or anyone else to use it.[8]

Accordingly, this Court holds that the Nationwide policy does not provide coverage to Wehland, and hereby grants the motion of defendant Nationwide for summary judgment and denies plaintiff's cross-motion for summary judgment.

It is so ordered.

---

7. The words "such a resident" refer back to words earlier used in the section of the policy involved, namely, "any resident of the same household."

8. In *Keystone,* Judge Smith commented (256 Md. at 426, 260 A.2d 275) upon the "informed prediction" of Judge Winter, sitting as a district judge in this Court, in Ohio Cas. Ins. Co. v. Pennsylvania Nat. Mut. Cas. Ins. Co., *supra,* 238 F.Supp. at 708 *et seq.,* that the Court of Appeals of Maryland, when faced with the question, would determine that a second permittee is an insured under the typical omnibus clause in an owner's liability policy if the second permittee received permission to use the car from the first permittee, who, in turn, in granting such permission to the second permittee, acted within the scope of the permission given to him (the first permittee) by the owner of the car. In so holding, Judge Winter noted that at the time he wrote his opinion, the Court of Appeals of Maryland had not answered that question. Judge Finan, speaking for the Court of Appeals in Zurich Ins. Co. v. Monarch Ins. Co., 247 Md. 3, 8–9, 230 A.2d 330 (1967), referred to Judge Winter's "informed prediction" in *Ohio Casualty,* but declined to rule upon the second permittee issue because *the scope of* permission in the *Zurich* case had been exceeded. Like Judge Smith in *Keystone* (256 Md. at 426, 260 A.2d 275), this Court need not, and does not, reach the second permittee issue in this case.