NATIONWIDE MUTUAL INSURANCE COMPANY, a body corporate, Plaintiff,

v.

AETNA CASUALTY & SURETY COMPANY, a body corporate, et al., Defendants.

Charlotte SHIFLETT et al., Cross Claimants,

v.

AETNA CASUALTY & SURETY COMPANY, a body corporate, Cross Defendants.

Civ. A. No. 18145.

United States District Court, D. Maryland.

July 13, 1972.

M. King Hill, Jr., Baltimore, Md., for plaintiff.

David M. Buffington, Baltimore, Md., for defendant and cross-defendant Aetna Casualty & Surety Co. and defendant Joseph E. Lucas.

Herbert J. Arnold, George L. Huber, Jr., and Arnold & Ehrhart, Baltimore, Md., for defendants Joyce Carol Chaney, Metta Chaney, Gary Lee Chaney and Connie Angelos.

Irwin M. Sussman, Baltimore, Md., for defendant Brenda Lucas.

Bayard Z. Hochberg, Baltimore, Md., for defendants Charlotte Shiflett, Patricia Shiflett, Veronica B. Shiflett and Elwood B. Shiflett.

Robert C. Verderaime, Baltimore, Md., of counsel for cross-claimants Charlotte Shiflett, Veronica B. Shiflett and Elwood B. Shiflett.

WATKINS, District Judge.

This is a suit brought by Nationwide Mutual Insurance Company (Nationwide) against Aetna Casualty & Surety Company (Aetna) and others for a declaratory judgment as to Nationwide's obligations under an automobile liability policy issued by it to one Veronica Shif-lett. Jurisdiction is based on diversity of citizenship and the amount in controversy. A cross-claim was brought against Aetna by Charlotte Shiflett and Veronica and Elwood Shiflett for their damages as a result of the accident.

The parties have stipulated to the following:

1. The facts set forth herein relate to January 15, 1967 unless it is otherwise specifically stated.

2. On January 15, 1967, Joseph E. Lucas, then age 20, was the son of Raymond Lucas and resided with his father at 507 E. Street, Baltimore, Maryland 21219.

3. A 1962 Chevrolet and a 1957 Ford were registered and titled at the Department of Motor Vehicles in the name of Raymond Lucas.

4. Aetna Casualty & Surety Company had in effect two policies of automobile liability insurance as follows:

A. Policy No. 98CA008585 (CA Policy)

(1) Named Insured—Raymond Lucas

(2) Policy Limit—$15,000/30,000

(3) Described Automobile—1957 Ford

(4) Endorsements—JR–11 for Joseph E. Lucas

B. Policy No. 98AD10452 PC ("Auto-Rite" policy)

(1) Named Insured—Raymond Lucas

(2) Policy Limit—$50,000

(3) Described Automobile—1962 Chevrolet

5. The 1962 Chevrolet Corvair involved in the accident was registered and titled at the Department of Motor Vehicles in the name of Veronica B. Shiflett, who was the named insured under policy no. 52D553–134 issued by Nationwide Mutual Insurance Company.

6. Charlotte Shiflett (age 16) and Patricia Shiflett (age 18) are the daughters of Veronica B. Shiflett and

were living with her and her husband Elwood Shiflett.

7. On January 15, 1967, Patricia Shiflett accompanied by Charlotte Shiflett and Brenda Lucas, were riding as passengers in the 1962 Chevrolet Corvair which was being driven by Joseph E. Lucas, and at the intersection of North Point Boulevard and Baltimore Street, collided with an automobile operated by Joyce C. Chaney. As a result of the collision, numerous personal injury claims and a property damage claim by the owner of the Chaney vehicle were asserted against Joseph E. Lucas and the Shifletts. All of these claims have been settled by Nationwide and Aetna except that the settlement of the suit on behalf of Charlotte Shiflett and her parents is conditional upon the finding of this Court as to whether Joseph E. Lucas is covered for legal liability arising out of this collision under policy no. 98AD10452 PC (the "Auto-Rite" policy).

8. Joseph E. Lucas did not have express permission from Veronica B. Shiflett or Elwood Shiflett to operate the 1962 Chevrolet Corvair which was involved in the accident.

9. That the following two factual issues are to be determined by this Court:

A. Whether Joseph E. Lucas was the real owner of the 1957 Ford automobile, and

B. Whether Joseph E. Lucas was a permissive user of the 1962 Chevrolet Corvair at the time and place of the accident.

The law of Maryland applies. See Ohio Casualty Insurance Co. v. Pennsylvania National Mutual Casualty Insurance Co., 238 F.Supp. 706, 708 (D.Md. 1965), aff'd per curiam 352 F.2d 308 (4 Cir. 1965); Mt. Beacon Insurance Co. v. Williams, 296 F.Supp. 1094, 1096 (D. Md.1969).

The determination of the two factual issues presented is necessary in considering the "Auto-Rite" policy issued by Aetna to Raymond Lucas which provided coverage on his 1962 Chevrolet Impala.

The cross-claimants seek coverage for Joseph Lucas under that policy which provides in part:

"PERSONS INSURED.

(b) With respect to a non-owned automobile

(2) a relative, but only with respect to a private passenger automobile or utility trailer, provided his actual operation or (if he is not operating) the other actual use thereof is with the permission, or reasonable belief to be with the permission of the owner and is within the scope of such permission, * * *."

Under "Definitions" the policy defines a "relative" as:

" 'Relative' means a person related to the named insured by blood, marriage or adoption, who is a resident of the same household, provided neither such relative nor his spouse owns a private passenger automobile;".

The first issue presented is whether Joseph E. Lucas or Raymond Lucas was the owner of the 1957 Ford automobile. This issue is to be determined on the basis of the testimony of Joseph and Raymond Lucas.

Joseph testified that in August or September of 1966, he purchasd a 1957 Ford. The automobile was titled and registered with the Maryland Department of Motor Vehicles in his father's name. A loan was obtained from a finance company in his father's and mother's names. These steps were taken, according to Raymond's testimony, because Joseph was a minor. The insurance on the car was obtained in Raymond's name —necessitated also by the fact that the car was so titled.

Joseph was added to this policy by an endorsement to satisfy the financial responsibility requirements of the Maryland Code, Article 66½. Joseph was not added to his father's original "Auto-Rite" policy on the 1962 Chevrolet because, as counsel for the cross-claimants states in his memorandum, at page 5, ". . . as his son was to be the principal operator [of the Ford], the premi-

ums would have been too expensive to maintain the $50,000 limit. Thus, the lower limit policy was purchased."

█ The registration of an automobile at the Department of Motor Vehicles in Raymond's name raises a rebuttable presumption of ownership in him. Keystone Insurance Co. v. Fidelity & Casualty Co., 256 Md. 423, 426, 260 A.2d 275 (1970); Travelers Corporation v. Kaminski, 304 F.Supp. 481, 489 (D.Md. 1969), and Liberty Mutual Insurance Co. v. American Automobile Insurance Co., 220 Md. 497, 500, 154 A.2d 826 (1959).

Although there are no Maryland cases directly on point, there is a general trend in the relevant cases which seems to indicate the proper determination of this issue.

The unrebutted testimony of both Raymond and Joseph was that Joseph was the principal driver, paid all operating and maintenance costs, paid the premiums on the insurance policy, and paid the installments on the loan from the finance company. Furthermore, Joseph was the sole user of the Ford, except that his father may have used it "once or twice." Both testified that Joseph needed no permission to use the car. Raymond testified that the car was Joseph's and he could "do as he pleased." When the automobile was "junked" in February, 1967, the $100.00 received was retained by Joseph and applied to the purchase of another car. All of these facts tend to rebut the presumption raised by the title, and indicate that Joseph was the actual owner of the Ford so as to preclude his being a "relative" within the "Auto-Rite" policy.

In Travelers Corporation v. Kaminski, 304 F.Supp. 481 (D.Md.1969) the minor, Davis, was in the household of his mother and step-father, the Jacksons. He and his step-father each put up about one-half of the down payment for an automobile, and the balance was borrowed by the Jacksons from the bank. The car was titled in the Jacksons'

names. Davis' name did not appear on either.[1]

For several months both the Jacksons and Davis paid part of the monthly loan payments to the bank. Both cars owned by the family were covered by Travelers. However, because Travelers had refused to add coverage for Davis, he obtained an operator's insurance policy through the Maryland Automobile Assigned Risk Plan, which was assigned to another company.

Not having to decide the extent of Davis' ownership, Judge Kaufman, after a detailed statement of the facts, stated in a footnote:

"This is not a case in which the true owner, a minor, persuaded an adult friend to purchase a car with the minor's money and to procure an owner's policy in the adult's name, such as in Didlake v. Standard Ins. Co., 195 F.2d 247, 33 A.L.R.2d 941 (10th Cir. 1952), and an accident occurred when the car was being driven by a permittee of the minor; or a case in which a estranged husband took a car registered in his wife's name, and covered by a policy in which the wife was the named insured, to another city, such as in Selected Risks Ins. Co. v. Miller, 227 Md. 174, 175 A.2d 584 (1961), and an accident occurred when the car was being driven by a permittee of the husband. In those cases, the courts held that the named insured had no control over the car and therefore could not have granted permission to use the car to the first permittee or through the latter to the second permittee. It can hardly be contended, in this case, that the Jacksons had no control over the automobile, and indeed Travelers has not taken such position. The Jacksons were not only the persons in whose name the Corvair was titled, which itself raises a presumption, albeit rebuttable, of ownership, but they were liable to the bank under the financing arrangements and themselves put up part of the payments for the

---

1. As with the Lucas' situation, the reason given was that Davis was under twenty-one.

car. They clearly were owners; if not sole owners, then joint owners with Davis.[2] They were not, as parents, mere paper title holders as was the case with the father in Liberty Mutual Insurance Co. v. American Automobile Insurance Co., 220 Md. 497, 154 A.2d 826 (1959)." *Travelers* at 489, Footnote 4.

The major distinguishing factor is the fact that the Jacksons paid a large part of the purchase price of Davis' car. In the case at bar, Joseph paid for everything.

In Unsatisfied Claim & Judgment Fund v. United States Fidelity & Guaranty Co., 256 Md. 412, 260 A.2d 279 (1970) the adult, employed son resided at his parents' home. The financing loan was signed by the father and the son. The down payment loan installments and operating expenses were paid by the son. The Court, holding that the son was the true owner of the car, said at 416, 260 A.2d at 281:

> "The undisputed testimony of the son was that he owned the vehicle. This would have the effect of rebutting the presumption that might have arisen by virtue of the titling of the vehicle in the name of the father."

Discussing the issue of whether the father then had sufficient interest in the vehicle to be entitled to possession and control of it, the Court concluded:

> "The fact that the son lived in the household of his parents, and that the father had co-signed a note would not effect sufficient changes to grant to the father such right of control over the vehicle as to be able to deny the use of the vehicle to the son who was the actual owner." *Id.* at 422, 260 A. 2d at 284.

In the case at bar, although Raymond was not a co-signer but was primarily liable for the loan, this was necessitated by Joseph's being a minor. This it seems would go toward the issue, if it were relevant, of the father's ability to exercise control over the use of the Ford and omnibus clause coverage in respect thereto, i. e. permission, but would not be sufficient to deny ownership in Joseph.

An ownership question similar to the one before the Court was presented in Keystone Insurance Company v. Fidelity & Casualty Company of New York, 256 Md. 423, 260 A.2d 275 (1970). Judge Sodaro, sitting as the trier of fact in the Superior Court of Baltimore City, found the minor son to be the owner of the automobile, purchased for $75.00, apparently in spite of the fact that the car was titled in the mother's name and that she was the "named insured"—with the son as an additional insured to meet the financial responsibility requirements of Article 66½ of the Md. Annotated Code (1957).

The final Maryland case found which seems relevant is Liberty Mutual Insurance Co. v. American Automobile Insurance Co., 220 Md. 497, 154 A.2d 826 (1959).

There a minor had obtained a "non-owners" policy, from *Liberty*, as required by the laws of Maryland, declaring that he did not own a car. However, he later successively owned three automobiles, each titled in his own name. Nine days before the accident, he transferred title to his father because " * * * the lending institution had required him to do so due to the son's minority." *Id.* at 499, 154 A.2d at 827. *Liberty* claimed that *American* was the

---

2. See Wehland v. Nationwide Mutual Insurance Company, 336 F.Supp. 360, 363 n. 6 (D.Md.1971) wherein Judge Kaufman " . . . doubts whether [the Court] has the authority, as a fact-finder, to make the finding of fact it made in *Kaminski* with regard to joint ownership, in view of Judge Smith's aforequoted statement in [Unsatisfied Claim and Judgment Fund

v. United States Fidelity & Guaranty Co., 256 Md. 412 at 422, 260 A.2d 279] that 'as a matter of law there was not sufficient evidence' in that case to permit a substantially similar finding." This does not alter the reliance in this opinion on the distinctions drawn therein, since this Court does not find there to be joint ownership in the case before it.

primary insurer by virtue of the "subsequently acquired" automobile provisions of the father's policy.

> "The testimony of the witnesses, and a deposition by the son, shows that the son alone took care of the maintenance and operated the vehicle. And, while the father procured the loan to pay for the Ford, it was the son who made the payments on the loan." *Id.* at 499, 154 A.2d at 827.

The Court affirmed the Chancellor's finding of fact that the father "was not the 'owner' " of the Ford.

These cases seem to parallel the situation presented here, the allegation being that the father is the true owner by virtue of his name being on the title, so as to make his insurance policy provide primary coverage. However, the above cases establish the Court's view to be that the titleholder is not necessarily the owner of the vehicle. The only factors present in this case which support the proposition that Raymond was the true owner of the Ford are (1) that it was titled in his name, (2) that the insurance policy was in his name, which was necessary by virtue of the previous factor (1), and (3) that the loan was in Raymond's and his wife's names. All three of these factors evolve from the fact that Joseph was a minor.

The cases cited in the memoranda of counsel, other than those discussed above, are inapplicable. Metropolitan Auto Sales Corp. v. Koneski, 252 Md. 145 (1969) does indeed, at page 155, 249 A.2d 141, approve of the holding in Liberty Mutual Insurance Company v. American Automobile Insurance Company, 220 Md. 497, 154 A.2d 826 (1959) that title registration merely raises a rebuttable presumption of ownership; however, as to the issue of ownership the facts in *Metropolitan* have no similarity to the Lucas case. There the issue was whether an automobile dealer or the original owner was the owner of the car which was the subject of a trade-in

and was involved in an accident during the course of the transaction.

In Johnson v. Keyes, 201 A.2d 24 (D. C.App.1964), cited by Aetna, the husband was held to be the true owner of the vehicle as a matter of law where he had purchased the automobile but had it titled in his wife's name to avoid creditors. She could not drive and the accident occurred subsequent to a marital separation.

Similarly, in United States Casualty Co. v. Bain, 191 Va. 717, 62 S.E.2d 814 (1951) a truck was titled in the name of an employee as a matter of convenience. The employee did not claim ownership and the evidence showed that the truck was bought with company funds. The employer was held to be the owner.

The cross-claimants further argue that "Raymond Lucas was in a position to control his son's use of the car—although such control was never exercised." [3] However, the issue of possession and control goes not to the question of ownership, but to the ability of the "Named Insured", who is not necessarily the true owner, to grant permission to use the car so as to bring the permittee within the coverage of the omnibus clause. Keystone Insurance Co. v. Fidelity & Casualty Co., 256 Md. 423, 260 A.2d 275 (1970); Unsatisfied Claim and Judgment Fund v. United States Fidelity & Guaranty Co., 256 Md. 412, 260 A.2d 279 (1970); Selected Risks Ins. Co. v. Miller, 227 Md. 174, 175 A.2d 584 (1961) and cases cited therein. See also Travelers Corporation v. Kaminski, *supra.*

█ Finally, cross-claimants argue that assuming *arguendo* that Joseph was the legal owner, we must look to the purpose of the exclusion. However, the Maryland Court of Appeals has consistently held that where the terms of a policy are clear and unambiguous they must be given their "usual and ordinary significance, thereby carrying out the intent of the parties as thus expressed."

---

3. Memorandum of Cross-claimants at page 6.

(citations omitted). Hankins v. Public Service Mutual Insurance Co., 192 Md. 68, 84, 63 A.2d 606, 614 (1949); American Home Assurance Co. v. Erie Insurance Exchange, 252 Md. 116, 121, 248 A.2d 887 (1969). The definition of "relative" does not appear to be one which requires any further interpretation by this Court. The only term which may appear hazy is "owns", which, when considered in light of the cases and its common usage, does not seem to fall within the realm of ambiguity.

After a careful reading of the cases and in consideration of the facts in this case, the Court finds as a fact that Joseph E. Lucas was the true owner of the 1957 Ford, and that, therefore, he cannot qualify as a "relative" within the meaning of the terms of the "Auto-Rite" policy issued in the name of Raymond Lucas to cover the latter's 1962 Chevrolet Impala. The presumption raised by the titling is clearly rebutted by the testimony of Joseph and Raymond Lucas that all costs and expenses were paid by Joseph. The only apparent reason for titling the car in Raymond Lucas' name was to arrange financing for the balance owed, which could not be done in Joseph's name.

In light of this finding by the Court, it is unnecessary to decide whether Joseph Lucas was a permissive user of the Shiflett's 1962 Corvair. However, if the Court would have had to consider this issue it would not have extended coverage to Joseph Lucas under the "non-owned automobile" clause of the Aetna "Auto-Rite" policy.

This Court holds that the Aetna "Auto-Rite" policy does not afford coverage to Joseph E. Lucas. Counsel may prepare a declaratory decree giving effect to the views set forth in this opinion.